# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **DODOTS LICENSING SOLUTIONS LLC,** | § | |
| *Plaintiff* | § | **W-22-CV-00535-ADA** |
| | § | |
| **-vs-** | § | |
| | § | |
| **SAMSUNG ELECTRONICS CO. and LTD., SAMSUNG ELECTRONICS AMERICA, INC.,** | § | |
| *Defendants* | § | |

## ORDER DENYING DEFENDANTS' MOTION TO TRANSFER

Before the Court is Defendants Samsung Electronics Co. Ltd ("SEC") and Samsung Electronics America, Inc.'s ("SEA") (collectively, "Samsung") Motion to Transfer Venue to the Northern District of California.[1] ECF No. 58. Plaintiff DoDots Licensing Solutions LLC ("DoDots") opposes the motion. ECF No. 80. Samsung filed a reply to further support its motion. ECF No. 84. After careful consideration of the parties' briefs and the applicable law, the Court **DENIES** Samsung's motion to transfer venue to the Northern District of California.

## I.    FACTUAL BACKGROUND

In its complaint, DoDots claims Samsung infringes of U.S. Patent Nos. 9,369,545 ("'545 patent"), 8,020,083 ("'083 patent"), and 8,510,407 ("'407 patent") (collectively, the "asserted patents"), which are directed to a method and system for accessing and displaying content to a user. ECF No. 29 ¶¶ 12, 45, 48, 51. DoDots, the owner of the asserted patents, is a limited liability company organized under the laws of Texas. *Id.* ¶ 1. DoDots' principal place of business is in

---

[1] The Court notes that Samsung filed this motion with its former co-defendants, Best Buy Stores, L.P., BestBuy.com, LLC, and Best Buy Texas.com, LLC. ECF No. 58 at 1. Because the Court has severed and stayed the claims against Best Buy Stores, L.P., BestBuy.com, LLC, and Best Buy Texas.com, LLC (ECF No. 93), the Court only considers whether the claims against Samsung should be transferred in this Order.

Dana Point, California. *Id.* ¶ 1. SEC is a company organized under the laws of the Republic of Korea with a principal place of business in South Korea. *Id.* ¶ 2. SEA is a wholly owned subsidiary of SEC. *Id.* ¶ 3. SEA is a corporation organized under the laws of New York with a principal place of business in New Jersey. *Id.* ¶ 4. According to DoDots, Samsung sells products that infringe the asserted patents, including Samsung Galaxy Z Series Mobile Phones, Galaxy S Series Mobile Phones, Galaxy Note Series Mobile Phones, Galaxy A Series Mobile Phones, Galaxy M Series Mobile Phones, and Galaxy Tab Series Tables. *Id.* ¶ 58. The Court will refer to these products as the "accused products." DoDots claims that Samsung launched and continues to operate, use, and sell an operating system customized from the Android OS (e.g., Android OS12, OS 11, QOS 10, Pie (9.0),Oreo (8.0), Nougat (7.0), Marshmallow (6.0), Lollipop (5.0), KitKat (4.4), Jellybean (4.3, 4.2 and 4.1), Ice Cream Sandwich (4.0), Honeycomb (3.0), Gingerbread (2.3), Froyo (2.2), Éclair (2.1), Donut (1.6)) along with other software (e.g., installers, the Play Store app, and the Galaxy App Store app) that are pre-installed or updated on each accused product. *Id.* ¶ 59.

Along with its claims against Samsung, DoDots also filed claims against Best Buy Stores, L.P., BestBuy.com, LLC, and Best Buy Texas.com (collectively, the "Best Buy Defendants") in this case. The Court severed and stayed DoDots' claims against the Best Buy Defendants under the customer-suit exception. ECF No. 93. Along with this case, DoDots also filed an action against Apple Inc., Best Buy Stores, L.P., BestBuy.com, LLC, and Best Buy Texas.com. *DoDots Licensing Solutions LLC v. Apple Inc. et al.*, No. 6:22-cv-533-ADA (W.D. Tex. May 24, 2022), ECF No. 1 [hereinafter "Apple Litigation"]. The Court also severed and stayed the claims against the Best Buy Defendants in the Apple Litigation. *DoDots Licensing Solutions LLC v. Apple Inc. et al.*, No. 6:22-cv-533-ADA (W.D. Tex. July 20, 2023), ECF No. 124.

After responding to DoDots' complaint, Samsung filed this motion to transfer. ECF No. 58. Samsung does not argue that the Western District of Texas ("WDTX") is an improper venue for this case; instead, it argues that the Northern District of California ("NDCA") is a more convenient forum, pointing to the location of potential witnesses and the relevant records in California. *Id.* at 1. DoDots contends that this case should remain in the WDTX, pointing to, among other factors, Samsung's witnesses and evidence in Texas and the presence of relevant third parties in this state. ECF No. 80 at 1.

## II.    LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . " *Id.* "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under § 1404(a) is whether a civil action "'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) [hereinafter *Volkswagen II*]. If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical

problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*] (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. While "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show an individual factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

## III.   DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the NDCA. Samsung argues that the threshold determination is met because SEA has facilities in California and over 220 full-time employees in the NDCA and SEC is a foreign corporation. No. 58 at 7. DoDots argues that the threshold is not met because DoDots brought this action against Samsung and the Best Buy Defendants and Samsung has failed to show that venue is proper in the NDCA for the Best Buy Defendants. ECF

No. 89 at 2–3. In its reply, Samsung argues that the Best Buy Defendants should not be a party to this suit. ECF No. 84 at 5.

Because the Court has severed and stayed the claims against the Best Buy Defendants, the Court only considers here whether transfer is appropriate for DoDots' claims against Samsung. Because Samsung has shown that venue is proper for the claims against SEC and SEA, the Court determines that the threshold determination is met. Because the threshold determination is met, the Court now analyzes the private and public interest factors to determine whether the NDCA is a clearly more convenient forum than the WDTX.

## A.  The Private Interest Factors

### i.   *The Cost of Attendance and Convenience for Willing Witnesses*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). According to Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317. But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in cases where witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, time is a more important metric than distance. *Id.* However, the Federal Circuit has also held that when willing witnesses will have to

travel a significant distance to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1342.

According to Samsung, the relevant witnesses from Samsung Research America ("SRA") and Google are located in California. ECF No. 58 at 12. Samsung also identifies SEA employees in the NDCA in its reply. ECF No. 84 at 1. Additionally, Samsung claims that it has relevant employees in Korea. ECF No. 58 at 12. According to DoDots, Samsung also has relevant employees in Texas. ECF No. 80 at 4. DoDots has also identified one person affiliated with its company. *Id.* at 10. Each group of witnesses will be discussed below.

### 1. Third-Party Witnesses in the NDCA

According to Samsung, the relevant witnesses in the United States are from SRA and Google in Mountain View, California. ECF No. 58 at 12. Samsung argues that the Court should afford greater weight to the convenience of third-party witnesses. *Id.* In response, DoDots argues that Samsung has failed to show that anyone from SRA is a willing witness. ECF No. 80 at 6. DoDots points to the declaration of two SRA employees, ████████████████████████. *Id.* Neither ████████████████ declaration state that they, or their teams, are willing to testify at trial in this case. ECF No. 58-10; ECF No. 58-9. Additionally, Samsung does not point to any evidence suggesting that Google employees are willing to testify at trial.

The Court agrees with DoDots—Samsung has failed to show that any of the third-party witnesses from SRA or Google are willing to testify in this case. The Federal Circuit has held that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018). Because Samsung has not shown that the witnesses from SRA and Google are willing to testify at trial, the Court considers these witnesses

under the compulsory process factor below. Since this factor considers the convenience of the willing witnesses, *Volkswagen I*, 371 F.3d at 203, the Court does not consider the potential witnesses from SRA and Google under the analysis of this factor.

### 2. SEA Employees in the NDCA

In its reply, Samsung notes that discovery revealed that Samsung's ███████████ that manages Samsung's U.S. Galaxy App Store, which DoDots accuses of infringement, is based in San Jose, California. ECF No. 84 at 1. Samsung points to the deposition transcript of SEA's employee ██████ . *Id.* ██████ stated that more than ten SEA employees in San Jose are on the ████████████ , including ██████ . ECF No. 84-2 at 74:5-76:13.

The Court weighs the presence of Samsung's ████████████ at best slightly in favor of transfer. The Court has minimal information about these individuals' roles with SEA. But the Court acknowledges that ██████ has testified that SEA's ████████████ "manage[s]" the accused "Samsung Galaxy Store." *Id.* at 74:15-20. Because the Court finds that members of this team may possess relevant knowledge, the Court concludes that the presence of approximately ten members of this team, including ██████ , weighs slightly in favor of transfer.

### 3. Samsung's Employees in Korea

Samsung claims that the remaining technical witnesses are located in Korea. ECF No. 58 at 12. Samsung claims that a sub-team of SEC's ████████████████████ collaborates with ████████████████████ . *Id.* at 5. This sub-team consists of twenty employees all based in Korea. *Id.* Samsung also contends that SEC in Korea "conducts all design and engineering work relating to Samsung's Galaxy App Store for downloading mobile apps." *Id.* Samsung claims that its employees in Korea would find the NDCA

more convenient because travel from Korea to the NDCA takes less time than travel from Korea to the WDTX. *Id.* at 12.

In response, DoDots argues that SEC's employees in Korea handle technical issues related to mobile apps. ECF No. 80 at 5. DoDots claims that it is unclear what relevant information these SEC employees possess. *Id.* DoDots further argues that even if any of SEC's employees in Korea possess relevant information, their presence in Korea should not weigh in favor of transfer. *Id.* DoDots cites *In re Apple Inc.*, 979 F.3d 1332, 1342 (Fed. Cir. 2020) for the proposition that the slight inconvenience of traveling to the WDTX rather than the NDCA does not weigh heavily on the outcome of this factor. *Id.* at 6.

The Court agrees with DoDots. While SEC employees may possess relevant information for trial, the slight inconvenience of traveling to the WDTX rather than the NDCA does not impact the outcome of this factor. In *In re Apple Inc.*, the Federal Circuit explained that while witnesses in New York would travel significantly less distance for trial in the WDTX than in the NDCA, "in either instance these individuals will likely have to leave home for an extended period of time and incur travel, lodging, and related costs." 979 F.3d at 1342. The court determined that these witnesses "will only be 'slightly more inconvenienced by having to travel to California' than to Texas.'" *Id.* Similarly here, while SEC's employees in Korea are closer to the NDCA than the WDTX, the slight inconvenience of having to travel to Texas rather than California does not weigh heavily on the outcome of this factor.

### 4.  Samsung's Employees in Texas

DoDots claims that this factor weighs against transfer because the vast majority of the relevant Samsung employees reside near Plano, Texas. ECF No. 80 at 3. DoDots identifies fourteen Samsung employees in Plano, including: (1) ███████, who testified that he is

responsible for Samsung's relationship with forty mobile app development partners; (2) █████████ ██████ who has knowledge regarding the marketing and sales of the accused products; (3) ████ ████ who has knowledge regarding the marking and sales of the accused products; (4) ████ ███████ who supports marketing for mobile applications; and (5) ████████████████, who is responsible for quality assurance and testing of mobile apps on the accused products. *Id.* at 4. ████████████ team includes nine other employees in Plano involved in the testing of mobile apps. *Id.* at 4−5. DoDots argues that there may have been other relevant Samsung witnesses in Texas, but Samsung's corporate representative was instructed to limit his investigation to only his team. *Id.* at 5.

In its reply, Samsung argues that the Samsung employees identified by DoDots do not have any technical involvement in the accused features. ECF No. 84 at 2. Samsung argues that only three of the Samsung employees identified by DoDots may possess relevant information: (1) █████████, (2) █████████ and (3) █████████. *Id.* at 2 & n.3. Samsung argues that neither █████████ nor any member of his team possesses relevant information. *Id.* at 2. Samsung argues that █████████ merely manages business relationship with app partners. *Id.* Samsung argues that all technical questions are referred to teams in Korea. *Id.* Samsung also argues that █████████ and his team do not possess relevant information. *Id.* Samsung claims that █████████ and his team test the look and feel of third-party mobile apps. *Id.* Samsung claims that this team does not have any knowledge of the apps' technical details. *Id.* Samsung claims that all issues found by ████ █████████ and his team are handled by Samsung's teams in Korea. *Id.*

To begin, the Court acknowledges that both parties agree that three Samsung employees in Texas possess relevant knowledge: (1) █████████, (2) █████████, and (3) █████████. The Court agrees. █████████████ likely possess knowledge regarding marketing and sales that

may be relevant to determining damages. ECF No. 80 at 4; ECF No. 80-1 at 19. ███████ likely possess knowledge regarding marketing that may be relevant to determining damages in this case. ECF No. 80 at 4; ECF No. 80-3 at 58:13−59:19. Because these three employees are located within a short drive of this District, the Court concludes that these Samsung employees would find the WDTX a more convenient forum than the NDCA. The Court weighs their presence in Texas against transfer.

As for ███████, the Court also weighs his presence in Texas against transfer. While Samsung contends that ███████ does not possess relevant knowledge to this case because he merely manages business relationships with app developers, the Court disagrees. ███████ manages contracts with app developers and manages vendors for the development of mobile apps. ECF No. 80-3 at 63:15−65:5, 65:21−66:21. ███████ knowledge of business relationships with app developers may be relevant to determining infringement and damages in this case. Thus, the Court weighs his presence in Texas against transfer.

Lastly, for ███████ and his team, the Court weighs their presence in Texas at most slightly against transfer. ███████ and his team test mobile applications, but they raise all technical issues to Samsung employees in Korea. ECF No. 84-3 at 38:5-23. While ███████ and his team may possess knowledge regarding infringement, the Court concludes their knowledge is limited because they do not resolve technical issues with applications. Their relevance to this case is limited.

5.  <u>DoDots' Party Witnesses</u>

DoDots claims that it ███████████████████████. ECF No. 80 at 10. DoDots claims that there is ████████████████████████. *Id.* DoDots claims that ███████ splits his time between residences in Nevada and Mexico. *Id.* DoDots

contends that ▮▮▮▮ expects to travel from his home in San Jose Del Cabo, Mexico for trial. *Id.* DoDots notes that ▮▮▮▮ does not view Waco as more or less convenient than the NDCA. *Id.* DoDots claims that inventors John and George Kembel are also willing to testify at trial. *Id.*

The Court concludes that none of DoDots' witnesses bear on the outcome of this factor. As ▮▮▮▮ states in his declaration, neither forum is more convenient for him. ECF No. 80-23 ¶ 7. Further, inventors John and George Kembel have not clarified that they are willing to testify at trial in either forum. ECF No. 80-24 ¶ 8 (John Kembel's declarations stating that he is willing to travel to Texas to testify); ECF No. 80-25 ¶ 8 (George Kembel's declaration stating that he is willing to travel to Texas to testify). In any event, John and George Kembel are in Colorado, and they likely would not find either forum more convenient.

### 6. Conclusion

The Court finds this factor is weighs against transfer. Both parties agree that at least three Samsung employees in the Texas would be relevant at trial. ECF No. 80 at 4; ECF No. 84 at 2 n.3. There are also additional Samsung employees in Texas with knowledge that may be relevant to this case. Based on the evidence provided, the Court concludes that there are more relevant Samsung employees in Texas.

### ii. *The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs

in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech*, 566 F.3d at 1345).

According to Samsung, this factor favors transfer because DoDots' infringement claims implicate sources of proof located in the NDCA. ECF No. 58 at 8. Samsung argues that there are no relevant Samsung employees in the WDTX and no relevant documents reside in this District. *Id.* Samsung also argues that there is no connection between the WDTX and DoDots. *Id.* Samsung argues that any presence DoDots has in Texas is "ephemeral, and a construct for litigation." *Id.* at 9 (quoting *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1378 (Fed. Cir. 2021)). Samsung argues that relevant DoDots document custodians likely reside in the NDCA because some of the inventors of the asserted patents are located in that district and DoDots' predecessors-in-interest are located in that district. *Id.* Lastly, Samsung argues that this factor favors transfer because employees of third-party Google work on the accused technology in Mountain View, California. *Id.* at 9.

DoDots argues that this factor weighs against transfer because Samsung has failed to allege that there are any physical documents in the NDCA. ECF No. 80 at 10. DoDots argues that the vast majority of the relevant witnesses are in either Texas or Korea. *Id.* DoDots claims that based on testimony from ██████████████████, Samsung's electronic documents can be accessed from anywhere. *Id.* DoDots argues that Samsung's electronic documents are equally accessible in either the WDTX or the NDCA. *Id.* at 11. DoDots argues that Samsung's and Google's teams in the NDCA do not possess relevant knowledge and Samsung has not identified any relevant documents maintained by these teams. *Id.* With respect to any documents maintained by Google, DoDots argues that Samsung has failed to identify any documents that Google has any where these documents are located. *Id.* at 12. DoDots notes that a former Google employee testified that Google's documents are stored in a share drive that is accessible from anywhere. *Id.* As for its

own documents, DoDots argues that it does not have any physical documents and its electronic documents are stored ██████████████. *Id.* at 11. DoDots claims that there is no evidence that any of the inventors have relevant prosecution documents in their possession. *Id.* DoDots claims that all of the prosecution documents are located in ████████████. *Id.*

In its reply, Samsung argues that Google must have relevant documentation because DoDots refers to Google documents in its infringement contentions. ECF No. 84 at 5. Samsung argues that relevant documents are created and maintained by Google employees in the NDCA. *Id.*

The Court acknowledges that the Fifth Circuit's decision in *In re Planned Parenthood* indicates a shift in the analysis of this factor. The Fifth Circuit has recently agreed with a district court that concluded that this factor is neutral because electronic evidence is equally accessible in either forum. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). The Fifth Circuit held that "[t]he location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature." *Id.* But the Federal Circuit has held that it is an error to conclude this factor is neutral because electronic documents are easily accessible in both forums. *In re Apple, Inc.*, No., 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022). To the extent that these two holdings can be reconciled, the Court concludes that the location of physical evidence is more important to this analysis than the location of where electronic documents are typically accessed. However, the Court still considers the location of document custodians of electronic documents in its analysis of this factor. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

Here, neither party has shown that physical evidence is present in the WDTX or the NDCA. Thus, the Court finds that any physical evidence does not weigh in the analysis of this factor.

Turning to the electronic evidence, the Court concludes that the parties have identified document custodians in both districts. As discussed above, DoDots has identified relevant Samsung employees located in Texas. *See supra* section III(A)(i)(4) (discussing ███████████████████ ████████████████████, and other potentially relevant Samsung employees in Plano, Texas). As discussed below, DoDots has also identified relevant third-party Samsung contractors and Google employees located in Texas. *See infra* section III(A)(iii) (discussing Samsung contractors in Plano and Google employees in Austin that may possess relevant knowledge). As discussed above, Samsung has identified a few SEA employees in the NDCA that may possess relevant knowledge. *See supra* section III(A)(i)(1) (discussing SEA's ████████████████). And as discussed below, Samsung has also identified potentially relevant third-party employees from SRA and Google based in the NDCA. *See infra* section III(A)(iii) (discussing SRA's ████████████████ ████). Lastly, Samsung has identified a few inventors and witnesses related to predecessors-in-interest of the asserted patents based in or near the NDCA. *See id.* (discussing three inventors and two witnesses related to predecessors-in-interest of the asserted patents). Based on the scattering of witnesses throughout California and Texas, the Court concludes it is likely that individuals based in Texas and in California are custodians of the relevant electronic documents. *See In re Google LLC*, 2021 WL 5292267, *2 (holding that it is an error to not "also consider[] the location of document custodians and the location where documents are created and maintained, which may bear on the ease of retrieval"). Based on the information provided, the Court does not find that substantially more evidence is located in California or in Texas. The Court also notes that based on the evidence provided, much of the key technical evidence in this case is located in Korea. ECF No. 80-1 at 22−24 (explaining that other than SRA's ████████, all of the relevant technical employees are based in Korea).

Accordingly, the Court finds that this factor is neutral.

### iii.    *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genentech*, 566 F.3d at 1345). The Federal Circuit has held that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, 2018 WL 4692486, at *3 n.1. However, the Fifth Circuit has clarified that "the availability of the compulsory process 'receives less weight when it has not been alleged or shown that any witness would be unwilling to testify.'" *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th at 630−31 (quoting *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488 (6th Cir. 2016)).

Samsung argues that this factor favors transfer because the relevant witnesses from SRA and Google are based in the NDCA. ECF No. 58 at 10. Samsung argues that the SRA employees that have knowledge about the development of the accused functionality in this case are based in Mountain View, California and Korea. *Id.* at 10−11. Samsung identifies the following individuals in Mountain View: (1) ███████, SRA Executive Vice President overseeing the ███████, which is the point of contact and liaison with Google for mobile device issues; (2) ███████ ███████, member of SRA's ███████; (3) ███████, member of SRA's ███████; (4)

██████████████, member of SRA's ████████; (5) ████████████████, member of SRA's ████████; (6) ██████████████, member of SRA's ██████████; (7) ██████████, member of the ████████; (8) ████████████, member of Google's ██████████, which works with SRA's ████████; (9) ██████████, member of Google's ████████████; (10) ██████████, member of Google's ██████████; and (11) ████████████████, member of Google's ██████████. *Id.* at 9−10. SRA's ████████ "works with Google on engineering aspects of Google apps and the Android platform, as well as approval processes for apps." ECF No. 58-10 ¶ 5. The ████████ works with Google on (1) the Android OS certification process for the accused products and (2) collaboration on Android OS and Google mobile app features. ECF No. 58-9 ¶ 8. The Android OS certification process ensures that Samsung's devices can handle test cases and test scripts designed by Google. *Id.* ¶ 9. One of declarants from SRA, ████████████████ claims that this certification process is relevant to DoDots' infringement allegations because testing graphical user interfaces and apps' retrieval of information from the internet occurs during the certification process. *Id.* ¶¶ 10−11. The ████████ also collaborates with Google on the Android platform and app features by serving as a liaison between Google and Samsung technical teams. *Id.* ¶ 12.

DoDots argues that SRA employees in the NDCA, including ████████████████████ ████████████████████████████████████████████████████████████, are not relevant. ECF No. 80 at 6. DoDots claims that these employees "simply report bugs/issues with mobile apps *for others to fix*." *Id.* (emphasis in original). DoDots cites deposition testimony from ████████, which states that ████████ does not work on or develop downloadable mobile apps. ECF No. 80-5 at 16:10-22. At most, ████████ reports to Google if there is an issue with a downloadable app. *Id.* at 16:24−17:6. ████████ states that he and his team do not handle the design, development, or coding of downloadable apps. *Id.* at 18:24−19:3. ████████ adds that while he

understands that this case relates to downloadable apps, his team does not work on downloadable apps. *Id.* at 43:6−44:5, 47:25−48:3. DoDots also cites deposition testimony from ███████. ECF No. 80 at 7. ███████ states in his deposition that he does not know how installers function. ECF No. 80-4 at 12:3-23. ███████ works on "ensuring the compatibility of apps on Samsung devices." *Id.* at 10:1-15. ███████ admits that he does not know the type of file that is downloaded when a user requests to download an app from the Samsung Galaxy store or Google Play store. *Id.* at 25:1−26:8. ███████ also admits that he does not know the data structure of a mobile app. *Id.* at 49:5-13. ███████ expressly states, "I don't build apps for Samsung." *Id.* at 89:11. As for members of Google's ███████ in California, DoDots argues that Samsung speculates about the knowledge of these individuals. ECF No. 80 at 13. DoDots argues that Samsung failed to gather information from Google during discovery. *Id.* DoDots complains that there is no testimony or declaration from the Google employees. *Id.* at 14.

The Court determines that the presence of members of Google's ███████, including ███████ ███████, in the NDCA weighs slightly in favor of transfer. The Court agrees with DoDots that Samsung has failed to provide information about the scope of knowledge possessed by these Google employees. The evidence provided by Samsung merely suggests that Google's ███████ communicates with SRA's ███████. ECF No. ███████ deposition explains that the identified members of Google's ███████ are "the representative folks." ECF No. 80-4 at 77:2-12. Samsung has failed to show that these Google employees have technical information needed at trial. But the Court acknowledges that these Google employees communicate with SRA's ███████ and they may possess limited knowledge regarding Google's relationship and communications with Samsung.

Similarly, the Court determines that the presence of members of SRA's ███████ ████████████████████████████████████████████████████████████████ █████████████, in the NDCA weighs slightly in favor of transfer. The Court agrees with DoDots that Samsung has failed to provide information showing that these ███████ members possess relevant technical knowledge. As discussed above, the ████████ focuses on (1) testing for the Android certification process and (2) collaboration with Google. ECF No. 58-9 ¶ 8. ██████ admits that his team does not work on design or development of downloadable apps. ECF No. 80-5 at 43:6−44:5. ███████████ also testified that he does not develop apps. ECF No. 80-4 at 89:11. █████████ has a limited understanding of the installation and structure of Android app files. *Id.* at 12:3-11, 13:21-15, 25:1−26-8, 33:18-25, 37:22−39:7, 44:1-20, 49:5-13, 51:17−52:19, 89:1-14. And Samsung itself argues that testing of applications is not relevant. ECF No. 84 at 2. Based on the evidence provided, the Court concludes that ███████████████, and the rest of the ███ ████ have limited relevant technical knowledge. Based on the evidence provided, it seems that most of the technical development of the accused technology takes place in Korea, not the NDCA. ECF No. 80-1 at 22−24 (explaining that other than SRA's █████████, all of the relevant technical employees are based in Korea). But because these SRA's ██████████ interacts with Google's ████ ████, the Court concludes that besides their limited technical knowledge relevant to this case, they may have limited relevant knowledge related to the relationship and communications between Samsung and Google.

Samsung also argues that this factor favors transfer because at least some of the inventors of the asserted patents reside in the NDCA. ECF No. 58 at 12. Samsung notes that, at the time of application, all of the inventors resided in the NDCA. *Id.* In response, DoDots notes that only three of the nine inventors are now located in California: John Russell, Joseph Bella, and Sridhar

Devulkar. ECF No. 80 at 14; ECF No. 80-24 ¶ 1 (declaration from John Kembel, stating that he lives in Boulder, Colorado); ECF No. 80-25 ¶ 1 (declaration from George Kembel, stating that he lives in Lafeyette, Colorado); ECF No. 80-26 ¶ 1 (declaration from Daniel Kim, stating that he lives in Korea); ECF No. 80-27 ¶ 1 (declaration from Geoffrey Kembel, stating that he lives in Ridgway, Colorado); ECF No. 80-28 ¶ 1 (declaration from Jacob Wobbrock, stating that he lives in Seattle, Washington): ECF No. 80-29 ¶ 1 (declaration from Jeremy Kembel, stating that he lives in Lake Oswego, Oregon); ECF No 80-30 ¶ 1 (declaration from Joseph Bella, stating that he lives in Burlingame, California); ECF No. 80-31 ¶ 1 (declaration from Mark Wallin, stating that he lives in Irvine, California); ECF No. 80-32 ¶ 1 (declaration from Sridhar Devulkar, stating that he lives in San Ramon, California). DoDots argues that because Colorado-based John and George Kembel are the "lead inventors" of the asserted patents and the founders of the original DoDots, they are the most likely to testify at trial. ECF No. 80 at 14. DoDots argues that the three California inventors are not likely to testify. *Id.*

Samsung also argues that this factor favors transfer because all of DoDots' predecessors-in-interest are based in California. ECF No. 58 at 3. In response, DoDots argues that ███████████ ███████████████████████████████████████████████████████████████████ ECF No. 80 at 14; ECF No. 80-21 ¶ 1−3; ECF No. 80-22 ¶ 1−2. The only other member is ██████████, who is a willing witness in this case. ECF No. 80 at 14. DoDots argues that either ████████████ ████████████ will testify at trial, but not both. *Id.* Declarations from ███████████████ suggest that they both reside in California. ECF Nos. 80-21, 80-22.

For the inventors within the subpoena power of the NDCA, the Court finds that their presence in California weighs at least slightly in favor of transfer. The Court acknowledges that John and George Kembel are the first inventors listed on each of the asserted patents and DoDots

claims that they are the "lead" inventors. ECF Nos. 1-6, 1-7, 1-8; ECF No. 80 at 14. According to DoDots, they are also the founders of the original DoDots, and the most likely to testify at trial. ECF No. 80 at 14. Based on this information, the Court concludes that it is more likely that John and George Kembel will be the only inventors to testify at trial. But if additional inventors are necessary, the Court finds that the presence of inventors Messrs. Russell, Bella, and Devulkar within the subpoena power of the NDCA weighs in favor of transfer.

For ████████████████, the Court concludes that the presence of these two individuals within the NDCA weighs in favor of transfer. DoDots has stated that either ██████ ████████ would testify at trial. *Id.* at 14. ████████ possesses "knowledge related to the prosecution of the [asserted] patents and efforts to license the DoDots patent portfolio to the defendants." ECF No. 80-21 ¶ 5. ████████ states in his declaration that he has "knowledge related to the prosecution of the [asserted] patents and efforts to license the DoDots patent portfolio to the defendants." ECF No. 80-22 ¶ 4. The Court concludes that ████████████ possess relevant knowledge that may be needed at trial. Because ████████████ likely reside within the subpoena power of the NDCA, the Court concludes that their presence in California weighs in favor of transfer.

DoDots argues that this factor weighs against transfer because Samsung has at least sixteen Samsung contractors in Plano that test the accused devices. ECF No. 80 at 12. These contractors include (1) ████████, (2) ████████, (3) ████████, (4) ██████, (5) ████████, (6) █████, (7) ██████, (8) ██████, (9) ████████, (10) █████, (11) ████████, (12) ████████, (13) ████████, (14) ██████, (15) ████████, and (16) ████ ██. ECF No. 80-12. These sixteen contractors work in Plano, Texas with the Samsung team that is responsible for quality assurance and testing of mobile apps on the accused products. ECF No.

80-8 at 33:8-12. This is the same team led by ███████████, which is discussed above under the willing witness factor. Samsung argues that these contractors "test the look and feel of third-party mobile apps, but they have no knowledge of the apps' technical details." ECF No. 84 at 2.

Similar to the rest of ████████ team, the Court concludes that the presence of contractors that work with █████████ team in Texas weighs only slightly against transfer. ██████████ and his team test mobile applications, but they raise all technical issues to Samsung employees in Korea. ECF No. 84-3 at 38:5-23. While ███████████ contract employees may possess knowledge regarding infringement, the Court concludes their knowledge is limited because they do not resolve any technical issues. Thus, their relevance to this case is limited.

Lastly, DoDots argues that Google has relevant employees in Texas. ECF No. 80 at 13. DoDots identifies ████████, who is located in Austin Texas and previously worked for Google on Android mobile app development. *Id.* ██████████ testified in his deposition that worked on the Android platform and developed apps in his role as a software engineer at Google. ECF No. 80-2 at 9:20-25. In his deposition, █████████ identified the following other Google employees who work on the design, development, and coding of mobile apps: (1) ██████████, (2) ██████ ██████, (3) ████████, and (4) ██████████. *Id.* at 25:8−26:18.

In its reply, Samsung complains that DoDots abandoned its efforts to seek third-party discovery from Google after the deposition with ████████. ECF No. 84 at 4. Samsung points to portions of █████████ deposition transcript that suggest ██████████ did not work with other Texas-based Google engineers in his second team at Google and █████████ believed that most other Google Play Service team members were in Mountain View. *Id.*

The Court concludes that the presence of █████████ and his colleagues, including █████████ ████████████████████████████████████, in Austin weighs against transfer. While

Samsung complains that DoDots abandoned its efforts to conduct third-party discovery from Google, the Court notes that Samsung also failed to conduct third-party discovery from Google. *See* ECF No. 80 at 13 (noting that Google did not seek information from Google during venue discovery). The Court declines to assume that there are more relevant third-party witnesses in the NDCA simply because DoDots did not schedule additional depositions with Google employees after ███████ deposition. Samsung does not dispute that ███████ and his colleagues may possess knowledge relevant to this case. Importantly, ███████ is the only U.S.-based individual identified by Samsung or DoDots with knowledge regarding Android app design and development. For that reason, the Court concludes that ██████████████ colleagues' presence in the WDTX weighs against transfer.

Accordingly, the Court finds that this factor weighs in favor of transfer. While there are technical employees from SRA and Google within the subpoena power of the NDCA, there are also Samsung contractors and Google employees within the subpoena power of this District. But the Court finds that this factor favors transfer because witnesses from DoDots' predecessors-in-interest are within the subpoena power of the NDCA. Additionally, inventors of the asserted patents are also within the subpoena power of the NDCA.

### iv.    *All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive*

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation before the trial court involving the same patent-

in-suit, and pertaining to the same underlying technology and accusing similar services, [the Federal Circuit] cannot say the trial court clearly [abuses] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010).

Samsung argues that this factor is neutral or slightly favors transfer because this case is in its infancy. ECF No. 58 at 13. Samsung asserts that the co-pending litigation in this District does not weigh against transfer because there is also a motion to transfer to the NDCA in that case. *Id.* In response, DoDots argues that this factor weighs against transfer because there is another case involving the same asserted patents pending in this Court: *DoDots Licensing Solutions LLC v. Apple, Inc. et al.*, No. 6:22-cv-533-ADA (W.D. Tex.). ECF No. 80 at 14.

The Court rejects Samsung's argument that this factor favors transfer because this case is in its early stages. The relevant inquiry under this factor is whether the circumstances in either the forum would make trial of the matter easier, more expeditious, or less expensive. *Volkswagen II*, 545 F.3d at 314. Even if this case is in its early stages, transferring this matter to the NDCA does not reduce the practical problems before a court in that district. Samsung has cited no authority for the proposition that this factor weighs in favor of transfer just because the case is in its early stages.

The Court finds that this factor weighs at least slightly against transfer because of the co-pending Apple Litigation. While the Court acknowledges that there is a pending Motion to Transfer Venue to the NDCA in the Apple Litigation, judicial efficiency will be improved if both cases remain in the same district. The Court also notes that the claims pending against the Best Buy Defendants, which were severed and stayed from this case and the Apple Litigation, remain pending in this Court.[2] Because related co-pending litigation is pending in this Division, the Court finds that this factor weighs against transfer.

---

[2] While the Best Buy Defendants joined in this Motion and in the Motion to Transfer Venue in the Apple Litigation, the Court notes that the Motions to Transfer Venue in both cases did not address whether the threshold inquiry of

Accordingly, the Court finds this factor weighs at least slightly against transfer.

## B.  The Public Interest Factors

### i.  *Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020). It considers the "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

Samsung argues that this factor is neutral because while this Court reaches trial more quickly on average, judges in the NDCA have fewer patent cases per judge than in this Division. ECF No. 58 at 14. DoDots agrees that this factor is neutral. ECF No. 80 at 15.

The Court notes that the Federal Circuit recently concluded that this factor should not weigh against transfer when the plaintiff "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution." *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). Here, DoDots has expressly stated that it does not sell any products. *DoDots Licensing Solutions LLC v. Apple Inc. et al.*, No. 6:22-cv-533-ADA (W.D. Tex. May 5, 2023), ECF No. 95 at 14. Because DoDots does not engage in product competition in the marketplace, the Court believes that this factor is likely neutral under the Federal Circuit's latest guidance.

---

whether venue is proper in the NDCA against the Best Buy Defendants. ECF No. 58 at 8; *DoDots Licensing Solutions LLC v. Apple, Inc. et al.*, No. 6:22-cv-533-ADA (W.D. Tex. Jan. 4, 2023), ECF No. 60 at 6.

### ii.    *Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung*, 2 F.4th at 1380. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *Id.* at 1319.

Samsung argues that this factor favors transfer. ECF No. 58 at 14. Samsung argues that there is a factual connection between this case and the NDCA, but there is no factual connection between this case and the WDTX. *Id.* Samsung argues that the relevant witnesses are located in the NDCA and Korea and no relevant witnesses are located in the WDTX. *Id.* Samsung also argues that the NDCA has a local interest because this case involves the patents of NDCA-based inventors. *Id.*

25

In response, DoDots argues that this factor is neutral. ECF No. 80 at 15. DoDots argues that this District has a local interest in this case because the Best Buy Defendants infringe in this District. *Id.* DoDots also argues that Google employees in the WDTX work on developing infringing apps for the accused products. *Id.* DoDots argues that all of Samsung's technical work takes place in Korea, not the NDCA. *Id.* DoDots argues that Korea, not the NDCA, has a local interest in this case. *Id.* DoDots argues that the SRA employees in the NDCA have no relevant information. *Id.*

The Court finds that this factor weighs slightly in favor of transfer because a few of the inventors of the asserted patents and witnesses from DoDots' predecessors-in-interest are located in the NDCA. The Court concludes that this case will likely "call[] into question the work and reputation" of these individuals in the NDCA. *In re Apple*, 979 F.3d at 1345. The Court also concludes that this case will call into question the work and reputation of Google employees based in this District, including ███████████████████████████████████ ██████. These individuals work on application development for Android OS, which is at the center of DoDots' infringement allegations. The Court ultimately finds that Korea likely has the greatest local interest in this case because the majority of the technical development of the accused features of the accused products takes place there. ECF No. 80-1 at 22−24 (explaining that other than SRA's SPE team, all of the relevant technical employees are based in Korea).

Accordingly, the Court weighs this factor slightly in favor of transfer.

### iii.    *Familiarity of the Forum with the Law That will Govern the Case*

Samsung and DoDots agree that this factor is neutral; both forums are familiar with the law that will govern this case. ECF No. 58 at 15; ECF No. 89 at 15. The Court agrees.

iv.    ***Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law***

Samsung and DoDots agree that this factor is neutral—there are no potential conflicts here. ECF No. 58 at 15; ECF No. 80 at 15. The Court agrees.

## IV.    CONCLUSION

Having considered the private and public interest factors, the Court finds that four factors are neutral, two favor transfer to the NDCA varying degrees, and two factors disfavors transfer to the NDCA to varying degrees. A decision to uproot litigation and transfer is not the consequence of a simple math problem. Instead, a moving party must show that the transferee forum is a clearly more convenient forum. Here, the Court finds that Samsung has met its burden of showing that the NDCA is a clearly more convenient forum. Importantly, the Court finds the willing witness factor, which the Federal Circuit has deemed the "most important factor in transfer analysis," weighs against transfer. *In re Genentech*, 566 F.3d at 1342 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)). The Court's conclusions for each factor are summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Neutral |
| Cost of attendance for willing witnesses | Weighs against transfer |
| Availability of compulsory process to secure the attendance of witnesses | Favors transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Slightly weighs against transfer |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Slightly favors transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

**IT IS THEREFORE ORDERED** that Samsung's Motion to Transfer Venue to the Northern District of California is **DENIED** (ECF No. 58).

**SIGNED** this 25th day of July, 2023.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE