# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **DODOTS LICENSING SOLUTIONS LLC,** | |
| **Plaintiff,** | |
| **v.** | |
| **SAMSUNG ELECTRONICS CO., LTD., AND SAMSUNG ELECTRONICS AMERICA, INC.,** | **Case No. 6:22-cv-00535-ADA-DTG** |
| **Defendants.** | |

## <u>DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND .................................................................................................... 2

    A.    The Asserted Patents & Pre-Suit Expiration ............................................. 2

    B.    DoDots' Allegations .................................................................................. 3

        1.    The Accused Products and Software ............................................. 3

        2.    DoDots' Allegations Regarding Samsung's Pre-Suit Knowledge .............. 4

        3.    DoDots' Indirect Infringement Allegations ................................. 5

        4.    DoDots' Marking Allegations ....................................................... 5

    C.    LEGAL STANDARDS ............................................................................... 6

        1.    Dismissal Under Rule 12(b)(6) .................................................... 6

        2.    Active Inducement Under § 271(b) .............................................. 6

        3.    Section 287's Limitation on Damages .......................................... 7

III.  ARGUMENT ......................................................................................................... 8

    A.    DoDots Fails to Adequately Plead Indirect Infringement ......................... 9

        1.    DoDots' Complaint Does Not Adequately Plead Knowledge .................... 9

        2.    DoDots' Complaint Does Not Adequately Plead Specific Intent ............. 14

    B.    DoDots Fails to Adequately Plead Entitlement to Relief as to the '083 and '407 Patents ........................................................................................... 15

        1.    DoDots' Complaint Does Not Plead Compliance with the Marking Requirements of § 287 ............................................................... 15

        2.    DoDots' Complaint Does Not Adequately Plead Actual Notice in the Absence of Marking ................................................................... 20

IV.   CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012)................................................................8

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
    6 F.3d 1523 (Fed. Cir. 1993)..........................................................8, 20

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
    24 F.3d 178 (Fed. Cir. 1994)........................................................ *passim*

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
    950 F.3d 860 (Fed. Cir. 2020)...................................................... *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................6, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................9

*Commil USA, LLC v. Cisco Sys., Inc.*,
    575 U.S. 632 (2015)......................................................................12, 13

*De Forest Radio Tel. & Tel. Co. v. United States*,
    273 U.S. 236 (1927)............................................................................17

*DoDots Licensing Sols. LLC v. Apple, Inc. et al.*,
    No. 6:22-cv-00533 (W.D. Tex. May 24, 2022), ECF No. 1 ...................16

*DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
    No. CV 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018).................14, 16

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006)......................................................6, 15

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)..............................................................9, 12, 13

*Kirsch Rsch. & Dev., LLC v. IKO Indus., Inc.*,
    No. 6:20-CV-00317-ADA, 2021 WL 4555608 (W.D. Tex. Oct. 4, 2021)...............6, 9, 13, 14

*Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc.*,
    No. 6:20-CV-00318-ADA, 2021 WL 4555802 (W.D. Tex. Oct. 4, 2021)..............................9

*Lans v. Digital Equip. Corp.*,
    252 F.3d 1320 (Fed. Cir. 2001)..........................................7, 15, 17, 20

*Lubby Holdings LLC v. Chung,*
   11 F.4th 1355 (Fed. Cir. 2021) ........................................................................20

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.,*
   No. 6:20-CV-008876-ADA, 2021 WL 3931910 (W.D. Tex. Sept. 1, 2021) ................. *passim*

*Texas Digital Sys., Inc. v. Telegenix, Inc.,*
   308 F.3d 1193 (Fed. Cir. 2002) ..........................................................................7

*Traxcell Techs., LLC v. Verizon Wireless Pers. Commc'ns, LP,*
   No. 6:20-CV-01175-ADA, 2022 WL 299732 (W.D. Tex. Jan. 31, 2022) ...................7, 14, 15

*USC IP P'ship, L.P. v. Facebook, Inc.,*
   No. 6:20-CV-00555-ADA, 2021 WL 3134260 (W.D. Tex. July 23, 2021) ........................6, 9

*Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc.,*
   103 F.3d 1571 (Fed. Cir. 1997) .........................................................................17

*Xiros, Ltd. v. Depuy Synthes Sales, Inc.,*
   No. W-21-CV-00681-ADA, 2022 WL 3592449 (W.D. Tex. Aug. 22, 2022) ..................10, 20

**Statutes**

35 U.S.C. § 271(a) .................................................................................................9

35 U.S.C. § 271(b) .............................................................................................1, 6

35 U.S.C. § 287 ............................................................................................2, 18, 19

35 U.S.C. § 287(a) ...................................................................................... *passim*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively, "Samsung") move to dismiss Plaintiff DoDots Licensing Solutions LLC's ("DoDots") Second Amended Complaint for Patent Infringement and Demand for Jury Trial, ECF 97 ("complaint" or "SAC"), for failure to state a claim for indirect infringement and failure to state a claim for pre-suit damages.

## I.    INTRODUCTION

DoDots' complaint suffers from two critical failures that require dismissal.

*First*, the Court should dismiss DoDots' indirect infringement claims. The complaint fails to adequately plead that, during the life of each of the asserted patents,[1] Samsung possessed the knowledge and specific intent that are required under § 271(b).[2] Apart from boilerplate legalese, DoDots' support for these elements is limited to two theories of notice, each critically deficient. The first theory arises out of an April 2011 email to an employee at a non-party affiliate, which: (1) was sent *before* any of the asserted patents issued; (2) did not identify any of the asserted patents; (3) identified the application for only one out of three asserted patents; and (4) did not name any accused products, articulate an infringement theory, or even allege infringement. On its face, this email does not support that Samsung knew of the patents, let alone knew of or specifically intended to cause another's infringement, as required. The second theory comes from alleged communications between a purported third-party patent broker and a Samsung representative about the sale of some non-specified patents owned by a non-specified party. Yet, those communications do not indicate whatsoever that Samsung, or any specific Samsung product, infringes. As a legal matter, these communications do not (and could not) demonstrate that

---

[1] The asserted U.S. Pat. Nos. 8,510,407 ("the '407 patent"), 8,020,083 ("the '083 patent"), and 9,369,545 ("the '545 patent") (collectively, "the asserted patents") all expired between 2019 and 2021, well before DoDots filed this lawsuit on May 24, 2022.

[2] The complaint does not mention contributory infringement.

Samsung had knowledge that it was somehow inducing third-parties to directly infringe the DoDots patents. Nor could Samsung's alleged encouragement of end users add anything relating to Samsung's specific intent, absent plausible allegations that Samsung had knowledge of the alleged direct infringement. Neither theory plausibly pleads Samsung's knowledge.

*Second*, the Court should also dismiss DoDots' complaint for failure to adequately plead entitlement to damages—the only relief sought—with respect the '083 and '407 patents, which contain apparatus claims. Section 287(a) requires actual notice or marking to recover pre-suit damages. Although DoDots' SAC suggests that DoDots produced products implementing the patented technology before 2004 and stopped at that time, under *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860 (Fed. Cir. 2020), DoDots had a marking obligation for any on-going licensees, explicit or implied. Critically, what is still missing from DoDots' SAC is DoDots' affirmative pleading that both it and its third-party licensees, including its customers, have complied with the marking requirements of 35 U.S.C. § 287.

## II.    BACKGROUND

### A.    The Asserted Patents & Pre-Suit Expiration

The asserted patents are closely related. Their specifications significantly overlap, and, for some patents, are nearly identical. The patents generally describe devices and methods for accessing/receiving content and displaying it on an electronic device. *See* SAC, Ex. 5 ('545 patent) at Abstract; SAC, Ex. 6 ('083 patent) at Abstract; SAC, Ex. 7 ('407 patent) at Abstract. The '545 patent's claims are all method claims and recite obtaining content over a network and displaying it to a user. *See* SAC, Ex. 5 ('545 patent) at claims 1, 16. The '083 patent's claims teach a client device that displays received content, or a method of presenting content to a user. SAC, Ex. 6 ('083 patent) at claims 1, 9. The '407 patent's claims are drawn to a client device configured to access and present content, or a method for the same. SAC, Ex. 7 ('407 patent) at claims 1, 13.

The asserted patents expired before DoDots filed this suit on May 24, 2022. The '083 patent expired on September 13, 2019—almost three years before this suit—for failure to pay maintenance fees. Ex. 1. The patent would have expired in any event on April 26, 2020—over two years before suit was filed. This is so because the '083 patent is subject to serial terminal disclaimers of any patent term after April 26, 2020, which is the expiration date of certain unasserted patents, namely U.S. Pat. Nos. 7,792,947 and 7,756,967. *See* Exs. 2-5. The '407 patent expired on April 26, 2020, because it is subject to serial terminal disclaimers of various patents that expired no later than that date. *See* Exs. 2-12. Lastly, the '545 patent expired no later than March 12, 2021. As such, all three asserted patents expired before this suit.

## B.    DoDots' Allegations

DoDots filed its original complaint on May 24, 2022, and later its first amended complaint, on September 12, 2022, and second amended complaint (now the operative pleading), on July 26, 2023, alleging that Samsung and Best Buy have infringed the asserted patents. *See generally* SAC. Best Buy was subsequently severed and stayed from this case. *See* ECF No. 93. The complaint alleges that DoDots owns all right, title, and interest in the asserted patents. SAC ¶¶ 46, 49, 52.

### 1.    The Accused Products and Software

DoDots' complaint identifies the following products as the "Accused Samsung Devices": "devices including Samsung Galaxy Z Series Mobile Phones, Galaxy S Series Mobile Phones, Galaxy Note Series Mobile Phones, Galaxy A Series Mobile Phones, Galaxy M Series Mobile phones, and Galaxy Tab Series Tablets." SAC ¶ 73. DoDots also identifies certain variants of the Google Android operating systems, and related software (labeled "Accused Samsung Software") as allegedly relevant to infringement. *See* SAC ¶ 74. DoDots further alleges that the Accused Samsung Devices can download applications, or "apps," and display those apps on a graphical user interface. SAC ¶¶ 75-76. DoDots does not identify particular apps that are relevant. Instead,

it broadly points to "Samsung-Supported Apps" that purportedly can be executed on the Accused Samsung Devices. *See id.* DoDots' theory is that Samsung directly infringes because the Accused Samsung Devices "require the Accused Samsung Software which executes specific code to obtain, install, and use Samsung-Supported Apps." SAC ¶ 77.

### 2. DoDots' Allegations Regarding Samsung's Pre-Suit Knowledge

DoDots' complaint alleges, "on information and belief," that Samsung was aware of the '407, '083, and '545 patents "as late as April 20, 2011," and that "KJ Kim, Samsung's IP counsel" is a "[p]erson[] of knowledge of Samsung's awareness of" the asserted patents. SAC ¶¶ 54-57. For support, DoDots refers to Exhibit 8, which purports to be an email from Wilfred Lam of Innovation Management Sciences to the email address "kj89.kim@samsung.com." SAC ¶¶ 54-56 & Ex. 8. The email purports to attach "a portfolio that came from a company, DoDots, a start-up that went out of business in the dotcom bust." SAC at Ex. 8. The email further states: "An office action with allowable subject matter has been issued for 11/932,585. US 7756967 and US 7792947 are good as well." *Id.* Application Number 11/932,585 is the application number of what eventually issued as the '083 patent. *See* SAC, Ex. 6. The email does not mention the '407 and '545 patents or their respective applications. *See* SAC, Ex. 8. The SAC further includes a post-hoc declaration from Mr. Lam attempting to explain the email's purpose. SAC, Ex. 9.

DoDots also relies upon a 2014 correspondence between a third-party patent broker, Mr. Ramde, and an alleged Samsung employee, Mr. Jang. *See* SAC, Ex. 10 at Exs. A-E. Mr. Ramde states in a LinkedIn message that he is "work[ing] with *a number of* technology start-ups" and is contacting Samsung "to see if they might be interested in acquiring" patents, without specifying which patents. SAC, Ex. 10 at Ex. A (emphasis added). Throughout the remaining communications cited, Mr. Ramde never identifies DoDots, the DoDots' patent portfolio, or the particular asserted patents in this case. *See generally* Ex. 10.

### 3.     DoDots' Indirect Infringement Allegations

DoDots' complaint alleges that Samsung indirectly infringed all three asserted patents by actively inducing its customers to infringe.  *See* SAC ¶¶ 127-135, 141, 149, 157.  First, under a heading titled "Samsung's Active Inducement," DoDots' complaint alleges that

> During the time the Patents-in-Suit were in force and before the filing of this suit, Samsung manufactured, exported, imported, distributed and sold Accused Samsung Devices to its customers which was intended to cause, and did cause, customers to use the Accused Samsung Devices and/or the Accused Samsung Software in the Accused Samsung Devices and directly infringe the Patents-in-Suit.

SAC ¶ 127.  The complaint further states that "Samsung promoted the use of apps on the Accused Samsung Devices, encouraging users of the Accused Samsung Devices to use apps from Samsung's Galaxy Store, and sold Accused Samsung Devices containing pre-downloaded apps to its customers—including the Galaxy Store app itself."  *Id.*; *see also id.* at ¶¶ 128-131.  It also alleges that "Samsung was aware of the Patents-in-Suit as late as April 20, 2011, and December 9, 2014," based on DoDots' pre-suit knowledge allegations.  SAC ¶ 132.  The complaint then alleges that it is Samsung's purported knowledge of the asserted patents combined with its alleged encouragement of users to use the Accused Samsung Devices demonstrates that Samsung had "knowledge that its end-users' actions would infringe the Asserted Patents," *id.* at ¶ 131, and that Samsung "specifically intended to induce direct infringement by its users," *id.* at ¶ 134.  DoDots also alleges, without support, that Samsung "was willfully blind" to its customers' alleged infringement.  *Id.* at ¶ 135; *see also id.* at ¶¶ 21, 141, 149, 157.

### 4.     DoDots' Marking Allegations

As for patent marking, DoDots alleges that "upon winding down its operations in 2004, DoDots did not make, use, offer to sell, sell, or support any of its products and, as such, there were no products to mark."  SAC ¶ 71; *see also id.* at ¶¶ 138, 148, 156.

### C. LEGAL STANDARDS

#### 1. Dismissal Under Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a complaint must contain sufficient factual matter, if accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To meet this factual plausibility standard, the plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' based on 'more than a sheer possibility that a defendant has acted unlawfully.'" *Kirsch Rsch. & Dev., LLC v. IKO Indus., Inc.*, No. 6:20-CV-00317-ADA, 2021 WL 4555608, at *1 (W.D. Tex. Oct. 4, 2021) (quoting *Iqbal*, 556 U.S. at 678). Although the Court must accept a complaint's facts are true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

#### 2. Active Inducement Under § 271(b)

Active inducement under 35 U.S.C. § 271(b) requires that "the defendant knew of the patent and that the induced acts constitute patent infringement." *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-008876-ADA, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1, 2021) (quoting *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015)). "To allege indirect infringement, the plaintiff must plead specific facts sufficient to show that the accused infringer had actual knowledge of the patents-in-suit, or was willfully blind to the existence of the patents-in-suit." *USC IP P'ship, L.P. v. Facebook, Inc.*, No. 6:20-CV-00555-ADA, 2021 WL 3134260, at *1 (W.D. Tex. July 23, 2021) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011)).

Beyond the knowledge requirement, inducement under § 271(b) requires that a defendant "possess[] specific intent to encourage another's infringement." *DSU Med. Corp. v. JMS Co.*, 471

6

F.3d 1293, 1306 (Fed. Cir. 2006) (quotations omitted).  To adequately plead intent, a plaintiff must allege "evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."  *Monolithic*, 2021 WL 3931910, at *5 (citation omitted); *see also Traxcell Techs., LLC v. Verizon Wireless Pers. Commc'ns, LP*, No. 6:20-CV-01175-ADA, 2022 WL 299732, at *4 (W.D. Tex. Jan. 31, 2022) ("Instructing others to perform an action 'such to cause infringement' does not plead the intent required by law.").

### 3.    Section 287's Limitation on Damages

Under § 287(a), a patentee is not entitled to damages for any time period during which it (i) fails to comply with its marking obligation and (ii) fails to provide the defendant with actual notice of the alleged infringement.  Section 287 provides that if neither requirement is met, "no damages shall be recovered by the patentee in any action for infringement."  35 U.S.C. § 287(a).

A patent owner's marking obligation generally arises when the patentee and/or its licenses make products practicing the patent.  *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1220 (Fed. Cir. 2002).  Once that obligation arises, a patentee and its licensees—both express and implied—must mark the patented articles or notify the defendant of the alleged infringement.  *See* 35 U.S.C. § 287(a); *see also Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("A patentee's licensees must also comply with § 287."); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994) (extending a licensee's marking obligation to "implied licensees").  Further, the patentee bears the burden of pleading its compliance with § 287(a)'s marking requirement.  *Arctic Cat*, 876 F.3d at 1366.  Applying this framework, courts have dismissed cases for failure to adequately plead entitlement to damages where the asserted patent expired before suit was filed and the patentee did not plead facts supporting that it marked its patented products or otherwise notified the defendant of the alleged infringement.  *See, e.g.*, *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001).

"Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device," and "not merely notice of the patent's existence or ownership." *Amsted*, 24 F.3d at 187. Further, "[t]he correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer." *Id.* (citations omitted); *see also Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 n.18 (Fed. Cir. 1993) (actual notice must "come from the patentee").

## III. ARGUMENT

DoDots' complaint contains a pair of fatal deficiencies that require dismissal of the applicable claims. First, DoDots' complaint fails to state a claim for indirect infringement, because it alleges no facts that plausibly support Samsung's knowledge and specific intent required for active inducement. DoDots' support for those elements is facially deficient because—among other reasons—it does not mention the asserted patents, does not mention infringement, and does not identify any particular accused products. DoDots' remaining indirect infringement allegations do not survive dismissal because they fail to show that Samsung intended to cause direct infringement.

Second, DoDots' pleading regarding its § 287 marking obligation is insufficient. Given its apparent significant licensing activity, it is highly plausible that DoDots was obligated to have its licensees mark their products prior to this suit. Regardless, DoDot's failure—for a second time—to adequately plead its satisfaction of the § 287 marking obligation dooms DoDots' claims. DoDots' pleading failure as to marking, coupled with its failure to plead pre-suit notice of the asserted patents, renders it unable to collect any damages for the alleged infringement of the asserted '083 and '407 patents,[3] which are now expired. The claims should be dismissed.

---

[3] "[I]f a single patent contains both apparatus claims and method claims, the marking requirement applies to all the claims." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1334 (Fed. Cir. 2012) (citation omitted). Because the '083 and '407 patents contain both method and apparatus claims, § 287's marking requirement applies to all their claims.

## A. DoDots Fails to Adequately Plead Indirect Infringement

The Court should dismiss DoDots' complaint to the extent it alleges indirect infringement, because it fails to adequately plead that Samsung possessed, during the asserted patents' lifetimes, the knowledge and specific intent required for active inducement. *See* 35 U.S.C. § 271(a) (limiting infringement to the patent term); *Singer*, 163 U.S. at 185 (same); *IKO*, 2021 WL 4555608, at *2 (dismissing indirect infringement claim for failure to "plead sufficient facts that would support an allegation of pre-expiration knowledge").

### 1. DoDots' Complaint Does Not Adequately Plead Knowledge

To adequately plead knowledge, DoDots must allege facts showing that, before the asserted patents expired in 2019, 2020, and 2021, Samsung had actual knowledge of the patents in suit or was willfully blind to their existence. *USC*, 2021 WL 3134260, at *1. As an initial matter, DoDots' one passing assertion that Samsung "was willfully blind to [the alleged] infringement" is insufficient to demonstrate knowledge. SAC ¶ 135. Given that DoDots does not identify any concrete steps Samsung took to avoid learning of the asserted patents or its supposed infringement of them, DoDots' conclusory willful blindness assertion should not be afforded any weight. *See, e.g.*, *Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc.*, No. 6:20-CV-00318-ADA, 2021 WL 4555802, at *2 (W.D. Tex. Oct. 4, 2021) ("A plaintiff who relies on willful blindness to plead knowledge *must identify in its complaint affirmative actions* taken by the defendant to avoid gaining actual knowledge of the patent to escape dismissal." (emphasis added) (citations omitted)); *see also Global-Tech*, 131 S.Ct. at 2072 (willful blindness requires "deliberate steps").

DoDots' allegations under an "actual knowledge" theory fare no better and fail the plausibility standard of *Twombly* and *Iqbal*. DoDots' complaint does not specifically allege that Samsung had "actual knowledge" of the patents during their lifetimes; instead, it alleges that Samsung gained awareness of the asserted patents based on either an April 2011 email or a series

of 2014 correspondences.  *See* SAC ¶¶ 54-72 & Exs. 8-10.  Neither demonstrates knowledge.

### a)    Mr. Lam's 2011 Email

DoDots' first relies upon a 2011 email purportedly sent by Wilfred Lam of Innovation Management Sciences.  SAC ¶¶ 54-59.  This 2011 email was not even directed to personnel that could have reasonably put Samsung on notice of any alleged infringement or relevant patents contained in the email—nor does the complaint explicitly allege that it was.  The email address "kj89.kim@samsung.com" belonged to Kwangjun Kim, who worked in the legal department of SEC until the end of 2010.  Mr. Kim moved positions to a separate company named Samsung Mobile Display on January 1, 2011.  Thus, by April 2011, Kwangjun Kim was not associated with Samsung's legal department.  It is dispositive that he was not even an employee of the defendants in this case—SEC or SEA—at that time.  DoDots makes no showing that it would be appropriate to impute Mr. Kim's knowledge to the Samsung defendants here.  *Xiros, Ltd. v. Depuy Synthes Sales, Inc.*, No. W-21-CV-00681-ADA, 2022 WL 3592449, at *3-4 (W.D. Tex. Aug. 22, 2022).

But even accepting the complaint on its face and viewing the complaint in the light most favorable to DoDots on this point, the email still fails for additional reasons.  This email does not identify the patent numbers of the asserted patents.  *See* SAC, Ex. 8.  It only mentions the application for the '083 patent, which was still being prosecuted.  Being informed of an application does not sufficiently establish knowledge of a patent, because there is no guarantee that the application will issue as a patent.  The email does not mention anything related to the '407 and '545 patents.  So, it contributes nothing to the factual predicates necessary for DoDots to *plausibly* allege Samsung's awareness of those patents.

DoDots also attaches to the SAC a declaration from Mr. Lam explaining that he emailed Mr. Kim "to inform him that [Mr. Lam's company] IMS had patent assets that Samsung might be interested in acquiring."  SAC, Ex. 9 at ¶ 9.  Nowhere did Mr. Lam's email articulate any allegation

of infringement of any particular patent by any particular Samsung products.  *See generally* SAC, Ex. 9.  Consistent with Mr. Lam's declaration, DoDots alleges in its SAC that Mr. Lam contacted Mr. Kim listing patents and applications because Mr. Kim "had encouraged Mr. Lam to share patent assets that he believed Samsung might be interested in."  SAC ¶¶ 58-59.  DoDots' allegations regarding Mr. Lam's communication to Mr. Kim serve only to strengthen the case for dismissal.  First, DoDots does not allege that Samsung was ever informed that it was inducing third-parties' infringement.  And the allegations worsen the deficiency by clarifying that Mr. Lam was not trying to notify Samsung of any infringement, but instead a potential patent sale.  Notification of a potential patent sale cannot plausibly support an allegation of indirect infringement.  These allegations and Mr. Lam's declaration thus do nothing to avoid dismissal.

### b)    Mr. Ramde's 2014 Correspondence

DoDots also relies upon a 2014 correspondence between a third-party patent broker, Mr. Ramde, and an alleged Samsung employee, Mr. Jang.  *See* SAC, Ex. 10 at Exs. A-E.  Nowhere in those communications does Mr. Ramde reference DoDots or its portfolio, let alone the particular asserted patents in this case.  Instead, Mr. Ramde states in a LinkedIn message that he is "work[ing] with *a number of* technology start-ups" and is contacting Samsung "to see if they might be interested in acquiring" some unidentified patents.  SAC, Ex. 10 at Ex. A (emphasis added).  Mr. Jang responds by asking for clarification and inviting Mr. Ramde to use his personal, non-Samsung email address.  SAC, Ex. 10 at Ex. B.  Mr. Ramde next emails Mr. Jang to clarify that:

> I do want to introduce some patent assets to Samsung to see if Samsung would be interested ***in purchasing them***.  The patents are part of several portfolios where my firm is managing the patent prosecution.  Would it be ok to send you a list of the portfolios to see if Samsung would be interested ***in acquiring them***?

SAC, Ex. 10 at Ex. C (emphasis added).  Then Mr. Jang responds that he is "willing to forward [Mr. Ramde's] email introducing IP transactions to a person who is dealing with patent acquisition.

However, do not expect too much to do make something with Samsung." SAC, Ex. 10 at Ex. D. Finally, Mr. Ramde emails Mr. Jang to ask if he received "the list of patents I previously sent over" and to further state, "Hopefully you are able to share them with the appropriate person within Samsung." SAC, Ex. 10 at Ex. E. Mr. Ramde does not provide any further messages—not even a message demonstrating which, if any, patents he actually sent.

This correspondence is just as deficient for pleading knowledge as Mr. Lam's email, because (i) it involves no allegation of infringement or identification of accused products or asserted claims, (ii) Mr. Ramde sought to propose a patent asset purchase (not allege infringement), and (iii) Mr. Ramde failed to communicate with an appropriate person at Samsung; instead, Mr. Jang (via his personal email account) merely expressed a willingness to forward the listed patents along to the right person but never confirmed thereafter that he actually did so. *See Global-Tech*, 563 U.S. 766; *Commil*, 575 U.S. 639; *Monolithic*, 2021 WL 3931910, at *5. It is not plausible that Samsung could have knowledge that it was inducing third-parties' direct infringement based on these communications. These communications, moreover, are even flimsier than Mr. Lam's email because they do not mention DoDots or the asserted patents (or their applications).

Further, the declaration DoDots provides from Mr. Ramde's is not credibile. Rather than simply attach the list of patents and applications that Mr. Ramde allegedly sent Mr. Jang, Mr. Ramde submits a declaration stating that his "common practice" was "to send a list of patents and patent application[s] to any prospective party for portfolios [he] was handling, and [he] would have done the same for Mr. Jang with respect to the DoDots portfolio." SAC, Ex. 10 at ¶ 15. Mr. Ramde cites an email to Apple as an example of this "common practice"—but that email is markedly different from Mr. Ramde's communications with Mr. Jang, casting doubt on the

existence of any common practice. The email to Apple included a subject line that read "Complete DoDots Portfolio." SAC Ex. 10 at Ex. F. The body stated, "Attached is the DoDots portfolio . . . ." *Id.* And the email attached a list of patents and applications that include the '083 and '407 patents and the application that issued as the '545 patent. *Id.* But Mr. Ramde's messages to Mr. Jang contain no similar indications that these communications were about DoDots' patents, let alone the asserted patents here. The contrast between Mr. Ramde's email to Apple and his correspondence with Mr. Jang undercuts any "common practice." And moreover, Mr. Ramde's allegation of a common practice only casts further doubt on whether he ever sent Mr. Jang a list of DoDots patents—or something else—especially given that Mr. Ramde did not include the list of patents that he allegedly sent to Mr. Jang or the email in which he sent the list.

But even interpreting Mr. Ramde's declaration in the light most favorable to DoDots, it is deficient because, like Mr. Lam's email, Mr. Ramde's correspondence with Mr. Jang did not inform Samsung that it was inducing other third-parties' infringement. *See Global-Tech*, 563 U.S. 766; *Commil*, 575 U.S. 639; *Monolithic*, 2021 WL 3931910, at *5.

### c)      DoDots' Allegations Fail as a Matter of Law

The facts alleged in the complaint are insufficient to plead actual knowledge of a patent under *IKO*, another Western District of Texas case. There, the plaintiff alleged that the defendant knew of the asserted patents because (1) the parties were direct competitors in a small market; (2) the parties attended the same trade shows; (3) the plaintiff's products were marked and well-known in the market; and (4) the defendant sought to sell the plaintiff's products in the past and therefore should have learned of the patent at that time. *See IKO*, 2021 WL 4555608, at *2 (Albright, J.). Yet, this Court held that "these allegations are insufficient to create a reasonable inference that Defendants had pre-expiration knowledge of the '482 patent." *Id.* DoDots' complaint here does not allege that Samsung was ever exposed to the asserted patents or any embodying products, let

alone that it was exposed repeatedly to them in the context of a small market, as in *IKO*. *See* SAC ¶¶ 54-72. DoDots' allegations are even sparser than those in *IKO*, and are not plausible.

Even assuming, *arguendo*, that the communications were somehow sufficient to give Samsung actual knowledge of the patents, DoDots must also adequately allege that Samsung knew of its customers' (*i.e.*, the purported direct infringers) infringement to adequately plead active inducement. Yet, the complaint offers no such support. *See* SAC ¶¶ 54-72. DoDots' complaint—like its complaint in an earlier Delaware case asserting these patents—provides "no factual allegations that suggest Defendants possessed the requisite knowledge of infringement of any of the Patents-in-Suit prior to filing." *DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. CV 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018). Here, the 2011 email and 2014 communications makes no assertions that Samsung's customers infringe any of the asserted patents, let alone articulate any infringement theory. *See* SAC, Ex. 8. DoDots' other allegations fail to bridge the gap between awareness that the '083 patent's application is pending, on the one hand, *see id.*, and actual knowledge that Samsung's customers are infringing the asserted patents, on the other, *Monolithic*, 2021 WL 3931910, at *5.

### 2. DoDots' Complaint Does Not Adequately Plead Specific Intent

Moreover, DoDots' complaint fails to adequately plead that Samsung specifically intended to cause its customers' direct infringement. *See* SAC ¶¶ 128-31, 134, 135. Specifically, DoDots alleges (i) Samsung's "encouragement of users to visit the Galaxy Store"; (ii) that "Samsung is aware of how much that an [sic] increasing number of visitors access the Galaxy App Store"; and (iii) that "Samsung acknowledges the developers and users that make the Galaxy Store a success." SAC ¶¶ 128-30. But "[i]nstructing others to perform an action 'such to cause infringement' does not plead the intent required by law." *Traxcell*, 2022 WL 299732, at *4. Absent any showing that Samsung was aware of the alleged infringement during the asserted patents' lifetimes, these

allegations fail to suggest Samsung's intent to cause *not merely the acts* that constitute infringement, but the *infringement itself*, as required. *See Monolithic*, 2021 WL 3931910, at *5 ("[T]here must be facts alleging a *specific intent to induce the direct infringer*."); *Traxcell*, 2022 WL 299732, at *4 (holding allegation that "Defendant learned of the patents-in-suit through related patent prosecution and patent litigation" was insufficient because it did not "properly plead that Defendants *intended for the customers to infringe*."); *DSU*, 471 F.3d at 1306. There is no plausible basis DoDots has pled for linking these alleged actions with any belief by Samsung regarding the asserted patents and the infringement of third parties.

For these reasons, the Court should dismiss DoDots' indirect infringement claims.

## B. DoDots Fails to Adequately Plead Entitlement to Relief as to the '083 and '407 Patents

DoDots' fails to plead entitlement to damages—the only relief sought—for infringement of the '083 and '407 patents, which contain apparatus claims. *First*, DoDots has not carried its burden of pleading compliance with its marking obligations under § 287. *Second*, in the absence of marking, DoDots' complaint does not plausibly allege that it provided Samsung with actual notice of infringement, as required under § 287. With these patents being expired and no past damages recoverable, DoDots' infringement claims on these two patents should be dismissed. *See Lans*, 252 F.3d at 1328 ("Because Uniboard's licensees did not mark their products and because Uniboard did not inform the Computer Companies of infringement before expiration of the '986 patent, § 287(a) prevents Uniboard from collecting damages from the Computer Companies.").

### 1. DoDots' Complaint Does Not Plead Compliance with the Marking Requirements of § 287

DoDots "bears the burden of pleading and proving [it] complied with § 287(a)'s marking requirement." *Arctic Cat Inc.*, 876 F.3d at 1366; *see also* 35 U.S.C. § 287(a). DoDots' alleges that DoDots had no marking obligations under § 287(a) during the asserted patents' lifetimes. *See*

SAC ¶ 71, 138, 148, 156. However, DoDots' complaint does not plausibly support this averment. For claims such as these, where DoDots seeks only past damages, it must plausibly plead either: (1) its compliance with § 287(a), or (2) that it had no obligation to comply with § 287(a). DoDots' complaint does neither. As it stands, DoDots only alleges that DoDots, itself, had no marking obligation. That falls well short of pleading that its licensees and customers never had a marking obligation.

For example, the complaint repeatedly mentions prior litigation with Lenovo starting January 2018, *see* Complaint, *Lenovo*, No. 18-cv-98-MN, ECF No. 1, and ending in a stipulated dismissal, *see* Stipulation of Dismissal, *Lenovo*, No. 18-cv-98-MN, ECF No. 91. *See* SAC ¶¶ 47, 50, 53. Dismissal of that case came with a license to Lenovo. *See* SAC ¶ 72. Apart from that case and this present action against Samsung, DoDots has also filed suit against Apple, Inc. *See* Complaint, *DoDots Licensing Sols. LLC v. Apple, Inc. et al.*, No. 6:22-cv-00533 (W.D. Tex. May 24, 2022), ECF No. 1.[4] These facts suggest that DoDots (or its predecessor(s) in interest) has engaged in a years-long campaign to license the asserted patents to companies making electronic devices, such as the Accused Samsung Devices, the accused products in the Lenovo litigation, and the accused products in the Apple case. *See* Second Amended Complaint, at ¶ 19, No. 18-cv-98-MN (D. Del. Jan. 9, 2019), ECF No. 30; Complaint, at ¶ 51, No. 6:22-cv-00533, ECF No. 1. The same facts also suggest that DoDots (or its predecessor(s) in interest) has entered into other license agreements involving the asserted patents during that period.

Even more, DoDots alleges in its complaint that it, at one point, had "dozens of customers that had used the technology to distribute their own Dots, including ABC, Bloomberg, Edmunds, CNET and Merriam-Webster." SAC ¶ 38. These allegations support the inference that DoDots

---

[4] DoDots filed the Apple litigation in this District, but the case was recently transferred to the Northern District of California. *See* No. 6:22-cv-00533 (W.D. Tex. May 24, 2022), ECF No. 125.

granted these customers and/or the "Dot" manufacturers an implied license, at a minimum, through DoDots' sales and promotions of these devices. *See Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997) ("[A]n implied license merely signifies a patentee's waiver of the statutory right to exclude others from making, using, or selling the patented invention."); *De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 241 (1927) ("Any language used by the owner of the patent or any conduct on his part exhibited to another, from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license."). However, the complaint nowhere asserts that DoDots' alleged customers marked the relevant devices. *See generally* SAC. When considered in concert with DoDots' licensing campaign, DoDots' customer-facing activities further reinforce DoDots' obligation to plead compliance with its marking obligations under § 287(a). *Amsted*, 24 F.3d at 185 ("[T]here is no reason why section 287 should only apply to express licensees and not to implied licensees.").

DoDots is obligated to plead facts showing that it satisfied any obligation it had to mark under § 287(a), particularly in view of DoDots' licensing campaign over at least the last five years and its customers' use of the claimed technology before that. That obligation requires, for example, an identification of any licensees and licensed products, as well as a showing that DoDots and any licensees marked the licensed products. Or alternatively, DoDots could attempt to show that each of its customers' and licensees' products do not practice the asserted patents. To be sure, DoDots does neither of these. Regardless, these facts must be pled one way or the other because, to the extent DoDots and any licensee failed to mark licensed products, DoDots is barred from recovering damages that accrued over the period of that failure. *See* 35 U.S.C. § 287(a); *see also Lans*, 252 F.3d at 1328 (affirming dismissal of complaint); *Amsted*, 24 F.3d at 185. Again, DoDots

has the ultimate burden of compliance with the marking statute . *See Arctic Cat*, 876 F.3d at 1366.

DoDots suggests that it created and sold products before 2004, but stopped making them when it "wound down its operations" in 2004. *See* SAC ¶ 70-71. On that basis, according to DoDots, it did not have any marking obligations after that time. *See* SAC ¶¶ 138, 148, 156, 164, 171. But the Federal Circuit rejected this argument in *Arctic Cat*, wherein Honda reached a license with Arctic Cat, authorizing Honda to use Artic Cat's patented inventions and any related, later-issued patents, with Honda's personal watercraft products. 950 F.3d at 862. That license agreement did not require Honda to mark its products. *Id.* Following that license agreement, the patents-in-suit issued a couple of years later. Honda continued to sell its personal watercraft products under the license until at least one year prior to suit. *Id.*

Before the district court, Arctic Cat argued that "§ 287 did not apply after the time that it alleges Honda stopped selling unmarked products, and Arctic Cat is therefore entitled to damages during the period after the cessation of Honda's sales but before the filing of its suit against Bombardier." *Id.* at 863. The Federal Circuit disagreed, explaining that: if "a patentee makes or sells a patented article and fails to mark in accordance with § 287, the patentee cannot collect damages until it either begins providing notice or sues the alleged infringer—the ultimate form of notice—and then only for the period after notification or suit has occurred." *Id.* (citations omitted).

The same problems exist here with DoDots' complaint. As discussed above, DoDots' complaint alleges it sold products that practice the technology of the asserted patents. *See* SAC ¶¶ 28–44. In an attempt to heal itself of its self-inflicted wound—having tied its asserted patents to the products DoDots sold years ago—DoDots alleges that its predecessor could not have sold products that practice the asserted patents because the asserted patents did not issue until after its predecessor ceased commercial operations. *See* SAC ¶¶ 138, 148, 156, 164, 171. But that

argument was also rejected by *Arctic Cat*, where the Federal Circuit held that Arctic Cat's marking obligation arose when its "licensee began selling patented articles." *Arctic Cat*, 950 F.3d at 865. And the obligation to mark does not arise just upon the licensee's sale, but also upon the licensee's "making" of a patented article. *Id.* ("Thus, once a patentee [or licensee] begins making or selling a patented article, the notice requirement attaches, and the obligation imposed by § 287 is discharged only by providing actual or constructive notice."). Here, DoDots admits it sold pre-2004 products to its customers, i.e., its licensees, but fails to address whether those pre-2004 products were being resold by licensees after 2004, or whether DoDots authorized third-parties to make or sell products after 2004. The allegations also fail to address whether its customers (licensees) stopped "making" products that delivered "content from the internet in the form of connected widgets or applications." *See* SAC ¶ 32. Absent a full-throated averment that its customers did not sell, re-sell, or make products using DoDots' technology after DoDots purportedly ceased commercial operations in 2004, the Second Amended Complaint fails to plead compliance with the marking requirement of § 287.

DoDots' averment that "DoDots did not license the Asserted Patents . . . prior to the license with Lenovo/Motorola in or around November 2021" is also insufficient to comply with its pleading obligation regarding marking. SAC ¶ 72. In particular, that statement does not address any implied license based on DoDots' conduct vis-à-vis third-parties and its sales to its customers. Section 287—and its pleading requirements for notice—apply just as equally to express licensees as implied licensees. *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994) ("[T]here is no reason why section 287 should only apply to express licensees and not to implied licensees."). Based on DoDots' deficient marking allegations, it is impossible to know whether DoDots—and the full scope of its licensees/customers—comply with § 287.

### 2. DoDots' Complaint Does Not Adequately Plead Actual Notice in the Absence of Marking

DoDots' complaint does not plausibly plead that DoDots provided Samsung with such notice as required under § 287 to permit recovery of damages in the absence of marking. The deficiencies identified above for the 2011 email and 2014 correspondence also prevent them from putting Samsung on actual notice of infringement. *See supra* Sec. III.A. For instance, those communications do not inform Samsung of any issued patents, *see Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1360 (Fed. Cir. 2021) (explaining notice of a patent's issuance "does not equate to actual notice."), and do not identify accused products, articulate an infringement theory, or even imply an accusation of infringement, *see Amsted*, 24 F.3d at 187 ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device."). Additionally, the communications came from "Innovation Management Sciences," not the owner of the asserted patents, which was Mainstream Scientific in 2011 and 2014. *See* Ex. 13 (showing assignment to Mainstream Scientific, LLC); SAC, Ex. 9 at ¶¶ 2-7; SAC, Ex. 10 at ¶¶ 2--8. But actual notice must "come from the patentee." *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 n.18 (Fed. Cir. 1993); *Lans*, 252 F.3d at 1327 ("[A]ctual notice under § 287(a) must be an affirmative act on the part *of the patentee* which informs the defendant of infringement." (emphasis added) (citation omitted)). Finally, the 2011 email's alleged recipient, Mr. Kim was not an employee of SEC or SEA in April 2011, *see supra* Sec. III.A.1.a), and DoDots does not plead facts that warrant imputing knowledge to those entities. *Xiros*, 2022 WL 3592449, at *3-4. Thus, DoDots has not plausibly plead that it put Samsung on actual notice of infringement.

## IV. CONCLUSION

For all of the above reasons, the Court should dismiss DoDots' complaint as to any pre-suit indirect infringement claims and as to all infringement claims for the '083 and '407 patents.

Dated: August 9, 2023                                 Respectfully submitted,

                                                       FISH & RICHARDSON P.C.

                                                       By: */s/ David M. Hoffman*
                                                       David M. Hoffman
                                                       TX Bar No. 24046084
                                                       hoffman@fr.com
                                                       111 Congress Avenue, Suite 2000
                                                       Austin, TX 78701
                                                       Tel: (512) 472-5070
                                                       Fax: (512) 320-8935

                                                       Michael J. McKeon (*pro hac vice*)
                                                       mckeon@fr.com
                                                       Adam R. Shartzer (*admitted to W.D. Tex*)
                                                       shartzer@fr.com
                                                       Michael J. Ballanco (*pro hac vice*)
                                                       ballanco@fr.com
                                                       Raj Utreja (*pro hac vice*)
                                                       utreja@fr.com
                                                       Irene Hwang (*pro hac vice*)
                                                       hwang@fr.com
                                                       1000 Maine Avenue, SW, Suite 1000
                                                       Washington, DC 20024
                                                       Tel: (202) 783-5070
                                                       Fax: (202) 783-2331

                                                       COUNSEL FOR DEFENDANTS,
                                                       SAMSUNG ELECTRONICS CO., LTD., AND
                                                       SAMSUNG ELECTRONICS AMERICA, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on August 9, 2023, and it was served via CM/ECF on all counsel of record.

/s/ *David M. Hoffman*
David M. Hoffman