IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| DODOTS LICENSING SOLUTIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendants. | Case No. 6:22-cv-00535-ADA-DTG |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 1

    A. DoDots' Indirect Infringement Claims Do Not Satisfy *Twombly/Iqbal* .................. 1

        1. DoDots Fails to Adequately Plead Pre-Suit Knowledge of the Alleged Infringement ................................................................................. 1

        2. DoDots' Complaint Does Not Adequately Plead Specific Intent ............... 7

    B. DoDots Fails to Adequately Plead Marking of the '083 and '407 Patents ............. 9

III. CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                 **Page(s)**

*Alldredge v. Astrue*,
 No. A-08-CA-482-AWA, 2009 WL 1938905 (W.D. Tex. July 6, 2009) ................................. 6

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
 24 F.3d 178 (Fed. Cir. 1994) ............................................................................................... 10

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
 876 F.3d 1350 (Fed. Cir. 2017) ....................................................................................... 9, 10

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
 950 F.3d 860 (Fed. Cir. 2020) ............................................................................................. 10

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .............................................................................................................. 6

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .............................................................................................................. 6

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
 681 F.3d 1323 (Fed. Cir. 2012) ............................................................................................. 8

*BillJCo, LLC v. Cisco Sys., Inc.*,
 No. 2:21-CV-00181-JRG, 2021 WL 6618529 (E.D. Tex. Nov. 30, 2021) ........................... 8

*Commil USA, LLC v. Cisco Sys., Inc.*,
 575 U.S. 632 (2015) .............................................................................................................. 2

*DSU Med. Corp. v. JMS Co.*,
 471 F.3d 1293 (Fed. Cir. 2006) ......................................................................................... 7, 8

*Global-Tech Appliances, Inc. v. SEB S.A.*,
 563 U.S. 754 (2011) .......................................................................................................... 1, 6

*Hafeman v. LG Elecs. Inc.*,
 No. 6:21-CV-00696-ADA-DTG, 2022 WL 3723304 (W.D. Tex. Aug. 28, 2022) ............... 9

*Innovention Toys, LLC v. MGA Ent., Inc.*,
 611 F. App'x 693 (Fed. Cir. 2015) ....................................................................................... 9

*Jawbone Innovations LLC, v. Google LLC*,
 6:21-CV-00985-ADA, 2022 WL 7145461 (W.D. Tex. Oct. 12, 2022) ............................ 3, 4

*Kirsch Rsch. & Dev., LLC v. IKO Indus., Inc.*,
 No. 6:20-CV-00317-ADA, 2021 WL 4555608 (W.D. Tex. Oct. 4, 2021) ....................... 3, 4

*Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc.*,
  No. 6:20-CV-00318-ADA, 2021 WL 4555802 (W.D. Tex. Oct. 4, 2021)............................3, 4

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009)..................................................................................................9

*Manville Sales Corp. v. Paramount Sys., Inc.*,
  917 F.2d 544 (Fed. Cir. 1990)................................................................................................7, 8

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*,
  No. 6:20-CV-008876-ADA, 2021 WL 3931910 (W.D. Tex. Sept. 1, 2021) ........................2, 3

*Motiva Pats., LLC v. Sony Corp.*,
  408 F. Supp. 3d 819 (E.D. Tex. 2019) .....................................................................................8

*Red Rock Analytics, LLC v. Apple Inc.*,
  No. 6:21-CV-00346-ADA, 2021 WL 5828368 (W.D. Tex. Dec. 8, 2021) ...............................8

*Traxcell Techs., LLC v. Verizon Wireless Pers. Commc'ns, LP*,
  No. 6:20-CV-01175-ADA, 2022 WL 299732 (W.D. Tex. Jan. 31, 2022) ........................7, 8, 9

*Xiros, Ltd. v. Depuy Synthes Sales, Inc.*,
  No. W-21-CV-00681-ADA, 2022 WL 3592449 (W.D. Tex. Aug. 22, 2022).......................4, 5

**Other Authorities**

Fed. R. Civ. P. 9(b) ...........................................................................................................................7

iii

**I.      INTRODUCTION**

DoDots' opposition offers no meaningful argument as to why the indirect infringement allegations and the claims for relief for the '083 and '407 patents in the Second Amended Complaint ("SAC") clear the legal hurdles to survive past the pleading stage. DoDots' arguments are specious, often mischaracterizing Samsung's positions and misinterpreting the law. Contrary to DoDots' opposition, Samsung does not ask the Court to engage in fact-finding. Rather, the facts pleaded, including accompanying declarations, are facially insufficient as a matter of law for DoDots to survive a motion to dismiss. DoDots' opposition does nothing to disrupt that conclusion, nor could it given the clear deficiencies with DoDots' allegations. Samsung's motion to dismiss the SAC should therefore be granted.

**II.     ARGUMENT**

**A.     DoDots' Indirect Infringement Claims Do Not Satisfy *Twombly/Iqbal***

**1.     DoDots Fails to Adequately Plead Pre-Suit Knowledge of the Alleged Infringement**

DoDots does not explain how the SAC adequately pleads Samsung's knowledge of the alleged infringement—that is, knowledge that the induced acts constitute infringement—as required under § 271(b). Because the asserted patents are expired, the only relevant facts that DoDots may plead regarding indirect infringement must be *pre-suit* facts demonstrating *pre-suit* knowledge that the induced acts constitute infringement of the specific asserted patents. Nothing that DoDots pleads in the FAC meets this high bar of pre-suit knowledge.

Active inducement requires more than mere knowledge of the asserted patents. It additionally requires (among other things) knowledge *that the induced acts constitute infringement*. The law here is well-settled. *See, e.g., Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("[W]e now hold that induced infringement under § 271(b) requires knowledge that the

induced acts constitute patent infringement."); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."); *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-008876-ADA, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1, 2021) (mere awareness of the asserted patents is insufficient).

Yet, DoDots does not explain how the SAC plausibly alleges that Samsung knew it was inducing others' direct infringement during the pre-suit enforceability period of the asserted patents. DoDots continues to rely on Mr. Lam's 2011 email to Mr. Kim, Opp. 5-6, but DoDots does not rebut key deficiencies with that email. As Defendants' opening brief explained, Mr. Lam's 2011 email is fatally deficient as a matter of law for multiple reasons. DoDots does not dispute that the email fails to (i) identify any accused products, (ii) mention the '407 and '545 patents or their respective applications, (iii) identify any allegedly infringed claims or patents, or (iv) otherwise assert that Samsung or its customers have infringed any of the patents mentioned in the email. *See* SAC ¶¶ 54-59 & Exs. 8, 9. And in Mr. Lam's own words, the purpose of his email was merely "to inform [Mr. Kim] that [Mr. Lam's company] IMS had patent assets that **Samsung might be interested in acquiring**"—not to allege infringement by Samsung or put Samsung on notice that it was inducing acts that constituted infringement. *See* SAC, Ex. 9 at ¶ 9.[1]

Thus, the SAC does not plausibly allege that Mr. Lam ever informed Samsung of any purported infringement of the asserted patents—by, for example, identifying asserted claims and accused products. *See generally* SAC. Given that Mr. Lam only allegedly pointed out certain patent assets to Mr. Kim for potential acquisition, but never alleged any infringement by Samsung, it is not plausible that Samsung would have gained knowledge of the alleged infringement (i.e., knowledge

---

[1] Unless noted, all emphasis added.

2

that its induced acts constituted infringement) by virtue of Mr. Lam's email to Mr. Kim. *Monolithic*, 2021 WL 3931910, at *5.

DoDots fails to address these critical defects, let alone offer valid arguments to cure them. DoDots instead leans on threadbare positions such as Samsung allegedly seeking to introduce facts outside the pleadings,[2] Opp. 6-7, or the notion that merely providing a patent application number in the context of a potential patent sale was sufficient to put Samsung on *actual* notice, *id.* at 5-6. DoDots offers no legal authority for this position. Being informed of an application does not sufficiently establish knowledge of a patent, because there is no guarantee that the application will issue as a patent. Besides, DoDots does not even allege that Mr. Lam provided application numbers for the '407 and '545 patent applications, let alone the patent numbers themselves.

DoDots' reliance on *Jawbone* is inapposite. Opp. 5 n.1 (citing *Jawbone Innovations LLC, v. Google LLC*, 6:21-CV-00985-ADA, 2022 WL 7145461 (W.D. Tex. Oct. 12, 2022)). DoDots cites *Jawbone* because "allegations that Google had pre-suit knowledge of the Asserted Patents and was a sophisticated company that would search and monitor patents were factors in denying a motion to dismiss." *Id.* However, DoDots completely misses the analysis distinguishing *Kirsch I* and *Kirsch II*, cases where this Court dismissed plaintiffs' induced infringement claims based on lack of pre-suit knowledge. *Jawbone*, 2022 WL 7145461, at *2 (citing *Kirsch Rsch. & Dev., LLC v. IKO Indus., Inc.* ("*Kirsch I*"), No. 6:20-CV-00317-ADA, 2021 WL 4555608, at *2 (W.D. Tex. Oct. 4, 2021); *Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc.* ("*Kirsch II*"), No. 6:20-CV-00318-ADA, 2021 WL 4555802, at *2 (W.D. Tex. Oct. 4, 2021)); *see also* Mot. 13-14.

---

[2] Samsung does not seek to introduce outside facts. DoDots' own pleadings put Mr. Kim in play; Samsung merely addresses the inadequacy of DoDots' allegations. As mentioned above and in Samsung's motion, there is no dispute that that the email from Mr. Lam to Mr. Kim fails to identify any accused products, identify with specificity allegedly infringed patents or claims, or otherwise assert that Samsung or its customers have infringed any of the patents mentioned in the email.

In *Kirsch I*, the defendant contacted plaintiff about selling plaintiff's products in Europe. 2021 WL 4555608, at *3. This Court noted that this "inquiry is different from that alleged here, where [plaintiff's agent] is alleged to have contacted Google about some of the **specific Asserted Patents**." *Jawbone*, 2022 WL 7145461, at *2. The facts here are more akin to *Kirsch I*. The communications sent by DoDots' agents Messrs. Lam and Ramde involved general sales inquiries and most certainly did not pertain to *specific asserted patents*. Similarly, in *Kirsch II*, the plaintiff informed defendant that the plaintiff's products were patented, but "failed to allege that the **actual patents** in the case were discussed." *Jawbone*, 2022 WL 7145461, at *2 (citing *Kirsch II*, 2021 WL 4555802, at *2). Such is the case here where DoDots' agents failed to discuss with Samsung any *actual patents*, alleged infringement, or purportedly accused products. Further, despite DoDots' conclusory statements regarding Samsung's alleged "practice of monitoring patents," DoDots does not allege plausible facts to allege Samsung monitored DoDots' patents. Opp. 9-10.

In any event, Mr. Lam's April 2011 email to Mr. Kim should separately be discounted because even if Mr. Kim had knowledge of the asserted patents, such knowledge cannot be imputed to the named Samsung defendants. DoDots does not dispute that, by April 2011, Mr. Kim was working at Samsung Mobile Display—an unnamed party—rather than SEC. Opp. 5-6. *Xiros, Ltd. v. Depuy Synthes Sales, Inc.*, No. W-21-CV-00681-ADA, 2022 WL 3592449, at *3 (W.D. Tex. Aug. 22, 2022) ("[W]hile Plaintiff identifies a relationship between DSS and its affiliates, it inadequately alleges a plausible claim that knowledge should be imputed to DSS."); *see* Mot. 10.

To sidestep this issue, DoDots argues that Samsung is offering facts outside the pleadings. Opp. 6. Not so. DoDots' own pleadings put Mr. Kim in play; Samsung merely addresses the inadequacy of DoDots' allegations. Despite DoDots' attempts to characterize Mr. Kim's move from SEC to Samsung Mobile Display as an "employee's moves within Samsung," Opp. 6, Mr. Kim

moved to a *separate company*. By April 2011, Mr. Kim was not associated with Samsung's legal department. It is dispositive that he was not even an employee of the named defendants at that time of Mr. Kim's email. DoDots does not allege—much less, plausibly allege—that it would be appropriate to impute Mr. Kim's alleged learning of the asserted patents in April 2011 (while he was employed Samsung Mobile Display) to SEC. Opp. 6; *Xiros,* 2022 WL 3592449, at *3. Here, the SAC does not so much as mention Samsung Mobile Display, let alone allege facts supporting that it could be appropriate to impute its knowledge to SEC or SEA. *See generally* SAC. Mr. Kim's alleged knowledge in 2011 must be discounted entirely.

As to Mr. Ramde's 2014 correspondence, DoDots' opposition fails to elucidate how the SAC plausibly alleges that Mr. Ramde's communication actually referenced DoDots, DoDots' portfolio, or the asserted patents, when it recited none of these things. Opp. 7-8. Nor does Samsung ask this court to weigh the evidence. DoDots mischaracterizes Samsung's position by stating that "Samsung questions the 'credibility' of [DoDots'] declarants." Opp. 1, 8. This is plainly false. Samsung's point is that the declarations themselves are facially deficient and fail to support DoDots' position that Samsung had pre-suit knowledge of the asserted patents. Mot. 10-13 (showing that both Mr. Lam's and Mr. Ramde's communications failed to inform Samsung of specific patents or allege infringement, instead being directed to general portfolio sales).

Through a cascade of what it improperly casts as "reasonable" inferences, DoDots would have this Court believe that Mr. Ramde sent Samsung a list of DoDots' patents. Opp. 7-9. This is simply not the case. The most DoDots can allege, even with Mr. Ramde's accompanying declaration, is that it was common practice for Mr. Ramde to attach a patent portfolio to his communications, and that Mr. Ramde showed Apple (not Samsung) the DoDots portfolio. Mot. 12-13; SAC, Ex. 10 at ¶¶ 10-15, Ex. F.

The email to Apple that DoDots clings to specifically mentions the "DoDots Portfolio," and attached to it a list of patents and applications that include the '083 and '407 patents, along with the application that issued as the '545 patents. SAC, Ex. 10 at Ex. F. But Mr. Ramde's messages to Mr. Jang contain no similar indications that these communications were about DoDots' patents, let alone the asserted patents here. The contrast between Mr. Ramde's email to Apple and his correspondence with Mr. Jang undercuts any "common practice." Finally, it is not, as DoDots alleges, "reasonable to infer that, given the contemporaneous documentation referring to the patents being sent, the patents were in fact sent." Opp. 8. The simple question is: if such a communication exists, where is it and why was it not alleged as part of DoDots' pleadings? The answer, and the only plausible inference, is that DoDots will not be able to produce this communication because it simply does not exist. DoDots has failed to make the requisite showing.

Finally, DoDots makes a conclusory assertions about Samsung's alleged willful blindness. DoDots makes a passing assertion that Samsung "was willfully blind to [the alleged] infringement" and that it "took deliberate steps to avoid learning of that infringement." SAC ¶¶ 115, 135; Opp. 10. These allegations are no more than conclusory statements that recite the elements of the standard and fail to meet the hurdles established by *Twombly* and *Iqbal*. Given that DoDots does not identify any concrete steps Samsung took to avoid learning of the asserted patents or its supposed infringement of them, DoDots' conclusory willful blindness assertion should not be afforded any weight, even at the pleading stage. *See, e.g.*, *Alldredge v. Astrue*, No. A-08-CA-482-AWA, 2009 WL 1938905, at *5 (W.D. Tex. July 6, 2009) (declining to afford weight to conclusory statement); *Global-Tech*, 563 U.S. at 771 (willful blindness requires "deliberate steps"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### 2. DoDots' Complaint Does Not Adequately Plead Specific Intent

Without a plausible allegation of Samsung's knowledge of the alleged infringement during the patents' lifetimes, DoDots' allegations that Samsung specifically intended to cause third-parties' direct infringement necessarily fail.[3] *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("The mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." (quotations and citation omitted)); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990) ("It must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement."); *Traxcell Techs., LLC v. Verizon Wireless Pers. Commc'ns, LP*, No. 6:20-CV-01175-ADA, 2022 WL 299732, at *4 (W.D. Tex. Jan. 31, 2022) ("Instructing others to perform an action 'such to cause infringement' does not plead the intent required by law."). In *DSU*, the Federal Circuit squarely rejected the plaintiff-appellant's argument—which DoDots echoes here—that, "to induce infringement, the inducer need only intend to cause the acts of the third party that constitute direct infringement." 471 F.3d at 1305.

DoDots argues that Samsung encouraged third-parties to perform acts that allegedly constitute direct infringement, and on that basis, DoDots' possessed the specific intent to cause the direct infringement during the asserted patents' lifetimes. *See* Opp. 6-14. DoDots' argument is contrary to law. *DSU*, 471 F.3d at 1305-06; *Manville*, 917 F.2d at 553; *Traxcell*, 2022 WL 299732, at *4. In particular, DoDots points to Samsung's alleged instructions, design of the accused

---

[3] Critically, DoDots mistakenly applies the pleading standard for fraud claims under Rule 9(b) to patent infringement claims, incorrectly arguing that "intent . . . may be generally alleged." Opp. 11; Fed. R. Civ. P. 9(b) ("Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

7

functionalities, and advertisements relating to the accused functionalities. *See* Opp. 13-14 (citing SAC ¶¶ 88, 104, 106, and 115 (instructions); *id.* at ¶¶ 97-122 (design of the accused functionalities); *id.* at ¶ 128-29 (advertisements)). Even assuming, *arguendo*, that these purported actions suggest intent to induce others to take *certain acts*, that would not be enough. DoDots is required to allege facts showing that Samsung specifically intended to induce others' direct infringement, not merely that Samsung intended to cause others to perform acts that happen to constitute the direct infringement. *DSU*, 471 F.3d at 1305-06; *Manville*, 917 F.2d at 553; *Traxcell*, 2022 WL 299732, at *4. In the absence of any plausible showing that Samsung was aware of the alleged infringement during the asserted patents' lifetimes, *see supra* § II.A.1, DoDots' factual allegations say nothing about Samsung's intent for active inducement purposes—nor could they.

None of DoDots' cited cases support the notion that a defendant may have the requisite intent despite its unawareness of the alleged infringement during the asserted patents' lifetimes. To the contrary, most of DoDots' cited decisions make express findings about the defendant having the knowledge required for inducement. *See In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1341, 1344 (Fed. Cir. 2012) (plaintiff sent defendant a cease and desist letter, and alleged knowledge based on the complaint); *Motiva Pats., LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 834 (E.D. Tex. 2019) (complaint sufficiently pled with "specific acts to implement and enforce policy of willful blindness"); *Red Rock Analytics, LLC v. Apple Inc.*, No. 6:21-CV-00346-ADA, 2021 WL 5828368, at *2, *7 (W.D. Tex. Dec. 8, 2021) (finding Apple knew of the alleged infringement from prior case involving same patent and infringement allegations); *BillJCo, LLC v. Cisco Sys., Inc.*, No. 2:21-CV-00181-JRG, 2021 WL 6618529, at *6 (E.D. Tex. Nov. 30, 2021) ("The *Complaint* . . . provides Defendants the requisite notice of the Asserted Patents to support a claim of indirect infringement at least as of the time the Complaint was filed.").

Other cases DoDots cites—even if they do not expressly discuss knowledge—still fail to support DoDots' position because they apply the requirement that the defendant must specifically intend to cause another's direct infringement and not merely intend to cause the acts that constitute the direct infringement. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1323 (Fed. Cir. 2009) (referring to the jury's finding "that Microsoft possessed the requisite intent to induce at least one user of its products to infringe the claimed methods"); *Hafeman v. LG Elecs. Inc.*, No. 6:21-CV-00696-ADA-DTG, 2022 WL 3723304, at *4 (W.D. Tex. Aug. 28, 2022) ("For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement." (citations and quotations omitted)). The last case that DoDots relies on does not involve active inducement at all. *See Innovention Toys, LLC v. MGA Ent., Inc.*, 611 F. App'x 693 (Fed. Cir. 2015). DoDots has therefore not cited support for the rule that it apparently relies on, i.e., that a defendant may possess the requisite intent (i) despite being unaware of the third-parties' direct infringement, and (ii) despite intending only to cause third-parties acts that happen to constitute the alleged direct infringement. That is not the law. The SAC does not plausibly allege that Samsung knew of, let alone specifically intended to cause, third-parties' direct infringement. *See, e.g.*, *Traxcell*, 2022 WL 299732, at *1.

Thus, the SAC's indirect infringement claims are fatally deficient and should be dismissed.

**B.     DoDots Fails to Adequately Plead Marking of the '083 and '407 Patents**

DoDots does not dispute, nor can it, that it is required to plead satisfaction of its marking obligation, either because it did not have one or because it and its licensees, including its customers, marked the relevant products. *See generally* Opp. 14-19; *see also Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) ("The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement."). Further, there is no

9

dispute that DoDots claims to have sold products practicing the same patented technology asserted in this case. *See* SAC ¶¶ 28-44. One must infer from its allegations that DoDots granted these customers and/or the product manufacturers an implied license, at a minimum, through DoDots' sales and promotion of these products. *See Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994) ("[T]here is no reason why section 287 should only apply to express licensees and not to implied licensees."). However, nowhere in the complaint does DoDots allege that customers (or any applicable sub-licensees) marked the relevant devices once the asserted patents issued. *See generally* SAC. Nor does DoDots' opposition adequately address this deficiency. *See generally* Opp. 14-19.

DoDots is also wrong that *Arctic Cat* is "wholly irrelevant" and "says nothing about when the obligation to mark begins." Opp. 19. *Arctic Cat* instead holds that one's marking obligation arises when a "licensee began selling patented articles." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 865 (Fed. Cir. 2020). And the obligation to mark also arises upon the licensees "making" of a patented article. *Id.* Absent a full-throated averment that its customers (licensees) did not sell, re-sell, or make products using DoDots' technology after DoDots purportedly ceased commercial operations in 2004, DoDots' marking allegations are deficient, making it impossible to know whether DoDots complied with § 287.

For these reasons, DoDots has not carried its burden of pleading compliance with its marking obligations under § 287. Further, in the absence of marking, DoDots' SAC does not plausibly allege that DoDots provided Samsung with actual notice of infringement, as explained in Section II.A.1 *supra*, and as also required by § 287. Dismissal is appropriate.

### III. CONCLUSION

For all of the above reasons, the Court should dismiss DoDots' complaint as to any pre-suit indirect infringement claims and as to all infringement claims for the '083 and '407 patents.

Dated: August 30, 2023

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ David M. Hoffman*
    David M. Hoffman
    TX Bar No. 24046084
    hoffman@fr.com
    111 Congress Avenue, Suite 2000
    Austin, TX 78701
    Tel: (512) 472-5070
    Fax: (512) 320-8935

    Michael J. McKeon (*pro hac vice*)
    mckeon@fr.com
    Adam R. Shartzer (*admitted to W.D. Tex*)
    shartzer@fr.com
    Michael J. Ballanco (*pro hac vice*)
    ballanco@fr.com
    Raj Utreja (*pro hac vice*)
    utreja@fr.com
    Irene Hwang (*pro hac vice*)
    hwang@fr.com
    1000 Maine Avenue, SW, Suite 1000
    Washington, DC 20024
    Tel: (202) 783-5070
    Fax: (202) 783-2331

**COUNSEL FOR DEFENDANTS,
SAMSUNG ELECTRONICS CO., LTD., AND
SAMSUNG ELECTRONICS AMERICA, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on August 30, 2023, and it was served via CM/ECF on all counsel of record.

                                                 */s/ David M. Hoffman*
                                               David M. Hoffman